(No. 75675.—■■■■)

DIXON DISTRIBUTING COMPANY, Appellee, v. HANOVER INSURANCE COMPANY *et al.* (International Insurance Company, Appellant).

*Opinion filed May 26, 1994.—Rehearing denied October 3, 1994.*

434

Jeffrey S. Hebrank and Donald J. Ohl, of Burroughs, Hepler, Broom, MacDonald & Hebrank, of Chicago, for appellant.

John Dale Stobbs, James S. Sinclair and John D. Stobbs II, of Stobbs & Sinclair, of Alton, for appellee.

JUSTICE MILLER delivered the opinion of the court:

This appeal involves a coverage dispute between plaintiff, Dixon Distributing Co. (Dixon), and one of its insurers. The dispute originated between the parties when Patrick Hanneken filed a retaliatory discharge action against Dixon. Dixon thereafter sought a declaratory judgment that defendants, Commercial Union Insurance Company (Commercial), Hanover Insurance Company (Hanover), Massachusetts Bay Insurance Company (Massachusetts), and International Insurance Company (International), must defend and indemnify it against the underlying retaliatory discharge action. The circuit court entered summary judgment in favor of defendants, finding there could be no insurance coverage for the underlying claim and, hence, no duty to defend on the part of the various insurance companies. The appellate court affirmed in part, reversed in part and remanded. (244 Ill. App. 3d 837.) We allowed Interna-

tional's petition for leave to appeal (134 Ill. 2d R. 315(a)) and now affirm the judgment of the appellate court.

## FACTS

The facts in this case are not in dispute. Hanneken filed a retaliatory discharge action against Dixon, alleging that he had suffered two work-related injuries during his employment with Dixon and had filed separate workers' compensation claims for each. Hanneken further alleged that Dixon's president, who was also a named defendant, "exhibited bias and prejudice against [him] in the exercise of his rights as an employee under the Worker's Compensation Act," and his discharge from employment was a "wilful, intentional and wrongful" act in violation of section 4(h) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.4(h)) and the public policy of Illinois. The complaint sought Hanneken's reinstatement to a "suitable position" and compensatory and punitive damages. This complaint was later dismissed, and Hanneken filed an amended complaint. The amended complaint alleged that Hanneken's discharge and Dixon's refusal to rehire him was "intentional and in retaliation of and solely for the exercise of [his] rights under the Illinois Worker's Compensation Act in violation of the *** public policy of the State of Illinois." This complaint again sought Hanneken's reinstatement to a "suitable position" and compensatory and punitive damages.

Following initiation of the suit, Dixon tendered defense of the underlying action to defendants under a package of comprehensive commercial insurance policies that it had purchased simultaneously from defendants. Hanover initially defended Dixon, under a reservation of rights, but later withdrew and discontinued all defense. International and Massachusetts refused entirely to defend Dixon, contending that their policies excluded from coverage the tort of retaliatory discharge

and, even if their policies did not exclude it, the public policy of Illinois would preclude insurance against such an act. Although Commercial represented Dixon in connection with the workers' compensation claims, it similarly refused to defend Dixon in the instant action. Because of defendants' refusal to defend it, Dixon instituted this declaratory judgment action, seeking a declaration that one or all of defendant insurance companies had a duty to defend and indemnify it in the underlying retaliatory discharge action.

Relying primarily on the Seventh Circuit's opinion in *United States Fire Insurance Co. v. Beltmann North American Co.* (7th Cir. 1989), 883 F.2d 564, which held that actual malice was a component of a retaliatory discharge claim in Illinois and that an insurance policy excluding offenses committed with actual malice necessarily excluded coverage for a retaliatory discharge claim, the circuit court ruled in favor of defendants on the parties' cross-motions for summary judgment. Following the opinion in *Beltmann,* the circuit judge found there could be no insurance coverage for damages involved in a retaliatory discharge action. With no possibility of coverage for the underlying claim, the judge found no duty to defend on the part of defendants.

Dixon appealed the judgment, except as it applied to Commercial, and the appellate court affirmed in part, reversed in part, and remanded. (244 Ill. App. 3d 837.) It summarily upheld the circuit court's ruling granting summary judgment in favor of Hanover and Massachusetts, reasoning that it was clear from their policies that neither included any possibility of coverage for the tort of retaliatory discharge. (244 Ill. App. 3d at 841.) The appellate court, however, found that the insurance policy issued by International potentially covered the tort of retaliatory discharge. In reaching this determination, the court disagreed with *Beltmann* and held that

actual malice was not an element of the tort. (244 Ill. App. 3d at 849.) Consequently, International could not rely on the definition of "occurrence" in its policy, which excluded coverage for offenses committed with actual malice, to exclude coverage. The court then went on to consider whether this potential coverage violated public policy. For various reasons, it concluded it did not. (244 Ill. App. 3d at 850-53.) As a result, the appellate court held International breached its duty to defend Dixon in the action. (244 Ill. App. 3d at 853-54.) While the appeal was pending, the underlying retaliatory discharge action was dismissed pursuant to a settlement agreement. (See 244 Ill. App. 3d at 840.) The appellate court did not reach the indemnification issue.

We allowed International's petition for leave to appeal (134 Ill. 2d R. 315(a)) and, for the reasons that follow, affirm the judgment of the appellate court. The primary issues on appeal are whether, under the terms of International's insurance policy, International owed a duty to defend Dixon against the retaliatory discharge claim, and if so, whether public policy prohibits such coverage. Because the appellate court found Hanover and Massachusetts did not have a duty to defend and Dixon did not appeal this ruling, we are not called upon to decide whether coverage existed under these policies.

## DISCUSSION

### A. Duty to Defend

In Illinois, an insurer's duty to defend is determined by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 107-08; *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73.) An insurer's duty to defend arises if the complaint alleges facts that fall within, or potentially

within, the policy's coverage. (*Wilkin,* 144 Ill. 2d at 73; *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 52.) Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage. *Wilkin,* 144 Ill. 2d at 73.

Turning to the policy at issue here, International's policy is a commercial umbrella policy that insures against general liability claims asserted by third parties in excess of the coverage provided by Dixon's general liability insurance carriers. While International's policy is an excess policy, it acts as primary insurance where the claim falls within the policy's coverage, but not under any other primary policy issued to Dixon. Under the policy, coverage is provided for:

"(a) Bodily Injury Liability,
(b) Personal Injury Liability,
(c) Property Damage Liability, or
(d) Advertising Liability, arising out of an occurrence."

Of the four areas of liability listed, only the category of personal injury liability is relevant to the present appeal. "Personal Injury" is defined as an:

"injury, such as but not limited to, libel, slander, defamation of character, discrimination, false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation which occurs during the policy sustained by a natural person, but excluding any such injury included within the definition of advertising liability."

With respect to personal injury, the policy defines "occurrence" as "an offense which results in Personal Injury, other than an offense committed with actual malice or the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured." The policy does not include a definition of actual malice. Finally, the policy also undertakes to provide a defense:

"With respect to any occurrence covered by the terms and conditions of this policy, but not covered, as warranted, by the underlying policies listed in Schedule A hereof or not covered by any other underlying insurance collectible by the insured, the company shall:

(a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

International first argues that because the complaint alleged that Hanneken's termination was "wilful, intentional and wrongful," actual malice was alleged. Therefore, International contends coverage is excluded under the policy's definition of "occurrence."

While International in its argument focuses on the language of the original complaint, containing the allegations of a willful, intentional and wrongful termination, the original complaint was dismissed, and an amended complaint was filed. The allegations contained in the original complaint are therefore of no relevance, and the focus should be on the allegations in the amended complaint. See *Pfaff v. Chrysler Corp.* (1992), 155 Ill. 2d 35, 61; see also *Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 272.

Nowhere in the amended complaint is the term "actual malice" used, nor can actual malice be inferred from the remaining allegations in the complaint. The amended complaint characterized Hanneken's termination as "intentional and in retaliation of and solely for the exercise of [his] rights under the Illinois Worker's Compensation Act." Intentionally means "[t]o do something purposely, and not accidentally." (Black's Law Dictionary 810 (6th ed. 1990).) An act can be done intentionally without being considered done with actual malice. Moreover, included in the definition of personal injury are acts that contain the element of intent. Were

we to equate intentional conduct with actual malice, coverage for certain intentional conduct would be provided under the definition of personal injury and then be taken away under the definition of occurrence. This would render the definition of personal injury superfluous and would create an ambiguity where none exists. Although ambiguities in an insurance policy will be construed against the insurer, courts will not distort the language of a policy to create an ambiguity where none exists. *Outboard*, 154 Ill. 2d at 108-09; *Wilkin*, 144 Ill. 2d at 74; see *Allstate Insurance Co. v. Boston Whaler, Inc.* (1987), 157 Ill. App. 3d 785, 790.

Likewise, the allegation that Hanneken's termination was in retaliation for filing workers' compensation claims cannot be construed to mean actual malice. An essential predicate of a claim for retaliatory discharge is an allegation that the employer's conduct be in retaliation for the employee's activities. The retaliatory nature of the discharge, in this context, does not mean that the discharge was committed with actual malice, but merely that the discharge was causally related to the filing of the workers' compensation claim. (See *Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 529.) Since the allegations in the amended complaint cannot be construed to mean actual malice, they do not fall beyond the scope of the policy's coverage.

International next argues that it did not have a duty to defend Dixon because actual malice is an element of retaliatory discharge. In order to recover under a claim of retaliatory discharge, International maintains, a plaintiff must show the employer acted with actual malice. Therefore, International argues the definition of "occurrence," which excludes coverage for offenses committed with actual malice, excludes coverage for retaliatory discharge. In support of this argument, International cites *Beltmann*, and urges this court to follow our circuit court in adopting *Beltmann*'s analysis.

In *Beltmann,* the Seventh Circuit Court of Appeals construed an insurance policy to determine whether it covered the defense of the insured in a retaliatory discharge action. The insurance policy's coverage extended to "personal injury" arising out of an "occurrence." In all relevant aspects, the policy defined these terms the same as International's policy. The insurer in *Beltmann* contended that it had no duty to defend the suit because of the policy provision excluding offenses committed with actual malice.

To resolve this issue, the *Beltmann* court first turned to the language of the policy. Like International's policy, the policy in *Beltmann* failed to define the term "actual malice." Because of Illinois' choice of law, Minnesota law governed the construction of the term since the policy was issued in Minnesota. After reviewing Minnesota case law construing malice, the court concluded:

> "Both actual and simple malice require that the defendant acted intentionally with knowledge that her conduct was wrongful. Actual malice entails the further component of an intent on the part of the defendant to injure the plaintiff by the wrongful act, or an affirmative[,] conscious and intentional disregard of the specific consequences which are certain to injure the plaintiff as a result of the wrongful act." *Beltmann,* 883 F.2d at 568.

Because the alleged tort occurred in Illinois and the underlying tort action was filed there, the court turned to Illinois law to determine whether that meaning of actual malice was an element of retaliatory discharge. The *Beltmann* court found that if actual malice existed within the elements of retaliatory discharge it was contained within the second element, which required that the discharge be in retaliation for plaintiff's activities. The court then held that the retaliatory nature of the discharge manifested an intent to injure or harm the plaintiff. Moreover, even if it could be argued that an employer did not intend to harm the em-

ployee, the employer knowingly disregarded the direct consequences of its improper conduct by improperly discharging the employee, thus falling under the umbrella of actual malice. *Beltmann*, 883 F.2d at 569.

Accordingly, the court found actual malice was subsumed within the elements of a retaliatory discharge claim. While it may not be an independent factor, the *Beltmann* court found that actual malice was proved by satisfying the formal elements of the tort. Because actual malice was a necessary component of retaliatory discharge and the insurance policy expressly excluded from coverage acts committed with actual malice, the court found that the insurance company had no duty to defend or indemnify the named insured. *Beltmann*, 883 F.2d at 569.

We disagree with *Beltmann*'s conclusion that, under Illinois law, once a plaintiff proves that his discharge was in retaliation for exercising a protected right, he has *de facto* proved actual malice. To state a valid claim for retaliatory discharge, a plaintiff must establish that he was (1) discharged, (2) in retaliation for his activities, and (3) that the discharge violated a clear mandate of public policy. (*Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, 160; *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 287; *Hinthorn*, 119 Ill. 2d at 529; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134.) As the *Beltmann* court concluded, if actual malice exists, it must be contained within the second element.

Nothing in Illinois case law, however, suggests that actual malice is incorporated within the second element. As we previously noted, the requirement that the discharge be in retaliation for plaintiff's activities merely requires that plaintiff allege the causal relationship between the employee's activities and the discharge. (*Hinthorn*, 119 Ill. 2d at 532.) Showing such a causal re-

lationship does not require showing the discharge was committed with actual malice. Therefore, we find actual malice is not an element of a retaliatory discharge claim.

International, however, contends a finding that actual malice is not an element of retaliatory discharge is inconsistent with this court's ruling in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, that punitive damages should be considered in the basic retaliatory discharge action. Since International argues it would be impossible to make out a retaliatory discharge case without proving one of the elements necessary to obtain punitive damages, International maintains actual malice is *de facto* proven in every retaliatory discharge case.

The fundamental flaw in International's argument is the assumption that punitive damages are required in every retaliatory discharge action. In *Kelsay*, this court permitted punitive damages to be awarded in cases of retaliatory discharge, but only "[u]nder such circumstances, when the facts permit." (*Kelsay*, 74 Ill. 2d at 187.) Neither *Kelsay* nor any other case mandates a punitive damages award. Evidence may be sufficient to support a finding of an employer's impermissible conduct, based upon evidence of a causal connection between the discharge and an employee's activities, but not support the level of conduct necessary to sustain an award of punitive damages. Permitting punitive damages in retaliatory discharge actions affects only the damages available in the case. It does not affect the cause of action itself or make an award of punitive damages a necessary consequence of the tort. Therefore, no inconsistency results in a finding that the tort of retaliatory discharge does not contain an element of actual malice, but to recover punitive damages, actual malice or a sufficient level of wilful and wanton conduct must be shown.

### B. Violation of Public Policy

International makes the additional argument that if we determine, as we have, that Hanneken's claim of retaliatory discharge potentially falls within the coverage of its policy that such coverage violates public policy. It contends that since *Kelsay* found acts of retaliatory discharge offend public policy, insurance coverage against that offense must also violate public policy. It further argues that such coverage is against public policy because it insures against intentional misconduct. In making this argument, International primarily relies on *Rubenstein Lumber Co. v. Aetna Life & Casualty Co.* (1984), 122 Ill. App. 3d 717.

In *Rubenstein*, the appellate court considered whether a workers' compensation insurance policy provided coverage for the defense of a retaliatory discharge action. After finding that the language of the insurance policy did not cover such an action, the court stated in *dictum*:

> "Moreover, even if the policy was written to expressly require defendant to defend and indemnify plaintiff in the retaliatory discharge action, we believe that such a provision would be void as against public policy, for it would be an attempt to indemnify and insure the company for damages resulting from its voluntary misconduct. An agreement to indemnify or insure against one's voluntary, not accidental, misconduct is against public policy and unenforceable. See *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 500-01 ***." *Rubenstein*, 122 Ill. App. 3d at 719.

At the outset, we note that the statement in *Rubenstein* on which International relies is *dictum*. Moreover, *Davis* does not support the proposition attributed to it in *Rubenstein* that insurance agreements indemnifying an insured for voluntary misconduct are against public policy. Although *Davis* states that an agreement to indemnify against wilful misconduct would, as a general rule, be contrary to public policy, the authority it cites

for this proposition only prohibits a party from exempting oneself from tort liability for harm caused intentionally. Therefore, the agreement in *Davis* must have been seen by the court as exempting a party from liability, and does not support a rule prohibiting an agreement by a third person to indemnify a party against liability in tort. See *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 500-01; Restatement (Second) of Contracts § 195, Comment *b*, at 66; 6A A. Corbin, Corbin on Contracts § 1472, at 146 (Supp. 1993); 15 S. Williston, Contracts § 1750A (3d ed. 1972).

While *Rubenstein* does not support International's argument, we recognize that it is generally held that a contract of insurance to indemnify a person for damages resulting from his own intentional misconduct is void as against public policy and courts will not enforce such a contract. (See 9 Couch on Insurance 2d § 39:15 (M. Rhodes rev. 1985); 6B J. Appleman & J. Appleman, Insurance Law & Practice § 4252, at 5 (1979); *Solo Cup Co. v. Federal Insurance Co.* (7th Cir. 1980), 619 F.2d 1178, 1187; *Hartford Life Insurance Co. v. Title Guarantee Co.* (D.C. Cir. 1975), 520 F.2d 1170, 1175; *Industrial Sugars, Inc. v. Standard Accident Insurance Co.* (7th Cir. 1964), 338 F.2d 673, 676; *Northwestern National Casualty Co. v. McNulty* (5th Cir. 1962), 307 F.2d 432, 442; *Isenhart v. General Casualty Co. of America* (1962), 233 Or. 49, 53, 377 P.2d 26, 27.) Other than the *dictum* in *Rubenstein*, International, however, does not cite any Illinois case, statute or legislative directive specifically holding that providing insurance coverage against liability for injuries resulting from intentional acts is void as against the public policy of Illinois, nor does it advance any arguments for us to find that it does. (See *University of Illinois v. Continental Casualty Co.* (1992), 234 Ill. App. 3d 340, 359 (finding there is no Illinois public policy prohibiting insuring for damages caused by

one's intentional acts, except to the extent that the insured wrongdoer may not be the person who recovers the policy proceeds).) In the absence of clearly articulated arguments or authority, we decline to adopt the public policy against insuring for damages resulting from intentional misconduct here. Therefore, we conclude that interpreting International's policy as providing coverage against retaliatory discharge claims does not violate any established public policy of this State. Further, we do not believe that allowing insurance coverage for retaliatory discharge will undermine the recognition of the tort of retaliatory discharge established in *Kelsay*.

### C. Violation of a Penal Statute

Finally, International argues that retaliatory discharge is not a covered "occurrence" because it involves the "willful violation of a penal statute." Because International did not argue that retaliatory discharge is a "willful violation of a penal statute" when Dixon raised that argument in the appellate court, International has waived the argument here. See *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 209-10.

### CONCLUSION

For the foregoing reasons, we conclude that the retaliatory discharge action potentially falls within the coverage of International's policy. As a result, International breached its duty to defend, as stated in the policy, by refusing to defend Dixon. The judgment of the appellate court is therefore affirmed.

*Affirmed.*