May 6, 1998 No. 5-95-0810

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

STATE FARM FIRE AND CASUALTY       )  Appeal from the

COMPANY,                           )  Circuit Court of

                                   )  Madison County.

     Plaintiff-Appellant,          )

                                   )

v.                                 )  No. 93-MR-374

                                   )

GREGORY LEE MARTIN, SR.,           )

SCOTT LEWIS, as Special            )

Administrator of the Estate of     )

Timmie Lee Lewis, Deceased, and    )

ETHELYN J. GORHAM, Executrix of    )

the Estate of Gary Porter,         ) 

Deceased,                          )  Honorable

                                   )  David Herndon,

     Defendants-Appellees.         )  Judge, presiding.

_________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

Plaintiff, State Farm Fire and Casualty Company (State Farm), filed a declaratory judgment action seeking a determination of whether it owed its insured, Gregory Lee Martin, Sr. (Martin), a defense and indemnification in two underlying wrongful death suits.  These suits were based upon Martin's involvement in an arson which resulted in the death of two firemen.  State Farm appeals from trial court orders finding that it had a duty to defend and to indemnify Martin.  We affirm.

This case originated with an arrangement between Martin and Delaney Gordon, Sr. (Gordon), to destroy a building.  Martin owned the designated building.  The building was located in Alton, Illinois.  Gordon was one of Martin's tenants, and in exchange for his participation, Martin offered him a reduced rental rate.

On October 24, 1992, at approximately 2 a.m., Gordon ignited the fire by leaving an unattended candle in a hamper in the basement.  An accelerant was used.  By the time the fire was reported and firemen responded, the building was in flames.  As the fire intensified, the building's second floor collapsed onto some of the firemen.  Firemen Timmie Lee Lewis and Gary Porter perished.

Martin and Gordon were indicted by a federal grand jury for damaging by fire a building used in interstate commerce, directly causing a death, in violation of section 844(i) of the Anti-Arson Act of 1982 (18 U.S.C. §844(i) (1988)).

Defendants Scott Lewis (Lewis) and Ethelyn J. Gorham (Gorham) were appointed executors of the estates of Timmie Lee Lewis and Gary Porter, respectively.  Lewis filed a wrongful death suit against Martin and Gordon on or about June 7, 1993.  Gorham filed her suit on or about July 7, 1993.  Both suits alleged that Martin negligently started the fire with the knowledge that firemen would respond.  

State Farm insured Martin's building.  Martin tendered both wrongful death suits to State Farm.  State Farm denied coverage and refused to defend Martin.  Martin did not answer the suits.  

State Farm filed the declaratory judgment action on August 20, 1993, alleging that the underlying actions did not constitute an occurrence as defined in the policy and that Martin's actions triggered two coverage exclusions.  State Farm asked the trial court to declare that there was no coverage under the Martin liability policy for the suits filed by the deceased firemen's estates.  State Farm also asked the trial court to declare that it had no duty to defend Martin in the underlying suits because of the lack of coverage.  Defendant Gorham sought to stay the declaratory judgment action until the federal criminal cases then pending against Martin and Gordon were resolved.  Defendant Lewis had not yet answered State Farm's declaratory judgment petition and thus did not file a motion to stay.  State Farm opposed the stay.  The trial court entered an order on February 24, 1994, staying the declaratory judgment action.  The order further stated that any party could move to lift the stay upon resolution of the criminal cases.  The record does not contain any order staying the wrongful death suits.

On September 23, 1994, Martin was found guilty on the indictment and in December 1994 was sentenced to 50 years' imprison­ment.  

During the summer of 1995, Gorham and Lewis defaulted Martin on the wrongful death suits.  On August 8, 1995, the trial court entered judgment on the negligence counts of Gorham's wrongful death suit against Martin in the amount of $10 million.  On September 5, 1995, the trial court entered judgment on Lewis's suit against Martin in the amount of $9 million.  Sometime in September 1995, after default judgments were taken in both suits, State Farm offered Martin a defense.

The record contains no order lifting the stay imposed upon the declaratory judgment action following the criminal case's conclusion.  However, on April 18, 1995, approximately seven months after Martin's conviction, State Farm filed a summary judgment motion in the declaratory judgment action seeking a determination that it had no duty to defend and indemnify Martin in the underlying suits.  On August 30, 1995, the trial court found that coverage existed, and the court denied State Farm's motion for summary judgment.  

Gorham filed her motion for summary judgment on September 20, 1995.  On September 29, 1995, State Farm filed a motion to reconsider the order denying its summary judgment motion.  On October 4, 1995, the trial court granted Gorham's motion for summary judgment and denied State Farm's motion to reconsider.  The record does not reflect that Lewis filed a motion for summary judgment, but the October 4, 1995, order stated that he did.  The order granted Lewis's summary judgment motion.  The trial court determined that coverage existed and that State Farm had a duty to both defend and indemnify Martin.  State Farm appeals both orders.

Summary judgment should only be granted when the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact.  
Myers v. Health Specialists, S.C.
, 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497 (1992).  On appeal, courts review summary judgment orders 
de novo
.  
Myers
, 225 Ill. App. 3d at 72, 587 N.E.2d at 497.

When an insurer questions whether an insured's claim possibly falls within the scope of coverage, the insurer essentially has two options.  The insurer must either (1) secure
(footnote: 1) a declaratory judgment as to its rights and obligations before or pending trial or (2) defend the insured under a reservation of rights.  
Shelter Mutual Insurance Co. v. Bailey
, 160 Ill. App. 3d 146, 151-52, 513 N.E.2d 490, 494 (1987); 
Trovillion v. United States Fidelity & Guaranty Co.
, 130 Ill. App. 3d 694, 700, 474 N.E.2d 953, 958 (1985); 
Reis v. Aetna Casualty & Surety Co. of Illinois
, 69 Ill. App. 3d 777, 782, 387 N.E.2d 700, 704 (1978); 
Thornton v. Paul
, 51 Ill. App. 3d 337, 340-41, 366 N.E.2d 1048, 1051 (1977), 
aff'd in part & rev'd in part
, 74 Ill. 2d 132, 384 N.E.2d 335 (1978).  

For the reasons that follow, we affirm.  The issues on appeal are somewhat intertwined in that State Farm's contentions that it owed its insured no duty to defend or indemnify, on the basis that there was no potential for coverage, rest on the bigger issue of whether State Farm's policy actually provides coverage for this incident.

There is no dispute that State Farm did not defend Martin until some time after default judgments were taken against him in both wrongful death suits.  State Farm filed the declaratory judgment but then did not advance the suit.  State Farm allowed the declaratory judgment to linger without resolution while the underlying wrongful death suits proceeded to default against its unrepresented insured.  

Given the possibility that State Farm could lose the declaratory judgment, we remain perplexed that State Farm failed to take the safest and simplest route available and provide some sort of defense pending the outcome of its declaratory judgment action.

State Farm contends that its policy defenses were preserved by merely filing the declaratory judgment suit, essentially arguing that so long as the insurance company at least filed suit, it can ignore its insured and watch the case proceed to default without repercussions.  We find it difficult to accept this argument and note that the cases State Farm cites do not detail facts similar to these.  However, we do not need to further interpret the meaning of the terms 
seek
 or 
secure
 and will not otherwise determine this case's outcome on an estoppel basis.  We turn to State Farm's contentions regarding the interpretation of its policy provisions in light of the underlying facts.

State Farm initially contends that Martin's actions do not amount to an "occurrence."  Its policy provides business liability for claims made or suits brought against its insured for damages because of 
bodily injury
 caused by an occurrence arising from the ownership, maintenance, or use of the insured premises.  The policy definition of 
bodily injury
 includes death resulting from bodily harm, sickness, or disease.  Occurrence is defined as "an accident, including exposure to conditions, which results in: (a) bodily injury *** during the policy period."

In the wrongful death suits at issue, the parties complain that Martin knew or should have known that firemen would respond to the fire and could be injured and that Martin was guilty of one or more of several negligent acts or omissions related to the fire and the firemen's response.  State Farm argues that while the complaints sound in negligence, Martin's involvement in the arson does not qualify as an accident.

State Farm also contends that coverage is barred by one of its exclusionary clauses.  This policy exclusion bars coverage if Martin expected or intended the firemen's deaths.

These accident and exclusionary clause issues are closely related and as we reach the same conclusion on both, we will analyze them concurrently.

The trial court determined that the facts of this case fell squarely within State Farm's definition of an accident in that the policy equates "exposure to conditions" to an accident.  The trial court went on to conclude that the firemen's deaths were an unintended result of an intended act and that therefore the occurrence qualified as an accident under the policy and that the exclusionary clause was ineffective.

This court previously defined 
accident
 as utilized in State Farm's policies as follows:  "An accident has been defined as an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character.  The natural and ordinary consequences of an act do not constitute an accident."  
State Farm Fire & Casualty Co. v. Watters
, 268 Ill. App. 3d 501, 506, 644 N.E.2d 492, 495-96 (1994), quoting
 Aetna Casualty & Surety Co. v. Freyer
, 89 Ill. App. 3d 617, 619, 411 N.E.2d 1157, 1159 (1980).  This court further explained the term by stating that an accident "involves the consideration of whether the injury was expected or intended from the standpoint of the insured."  
Watters
, 268 Ill. App. 3d at 506, 644 N.E.2d at 496.  

The determination of whether or not an occurrence qualifies as an accident requires reviewing the matter from the objective foresee­ability of the insured to determine whether the contingency is "known to all sensible men as likely to follow" naturally from the insured's conduct.  
Marsh v. Metropolitan Life Insurance Co.
, 70 Ill. App. 3d 790, 792, 388 N.E.2d 1121, 1123 (1979), quoting 
Hutton v. States Accident Insurance Co.
, 267 Ill. 267, 269, 108 N.E. 296, 297 (1915).  A certain outcome resulting from an insured's actions could be deemed foreseeable for purposes of tort liability and/or criminal liability, but not necessarily for insurance policy foreseeability, as the threshold is higher.  
Marsh
, 70 Ill. App. 3d at 792-93, 388 N.E.2d at 1123-24.  Moreover, except in situations involving sexual abuse and assault and battery where intent to injure is inferred, coverage is not excluded unless Martin acted with a 
specific intent
 to cause personal injury with conscious knowledge that the deaths were practically certain to occur.  
Scudder v. Hanover Insurance Co.
, 201 Ill. App. 3d 921, 927, 559 N.E.2d 559, 562 (1990); 
Grinnell Mutual Reinsurance Co. v. Frierdich
, 79 Ill. App. 3d 1146, 1148, 399 N.E.2d 252, 254 (1979); 
Bay State Insurance Co. v. Wilson
, 96 Ill. 2d 487, 493-94, 451 N.E.2d 880, 882-83 (1983).

The negligence counts of the complaints in issue do not allege a specific intent to injure the firemen.  Martin acknowledged that his intent was to destroy a building.  He contends that the firemen's deaths were an unexpected event.  While his participation in the crimes resulting in death was obviously criminal, it does not 
clearly
 follow that Martin expected or intended the deaths.  See 
Taylor v. John Hancock Mutual Life Insurance Co.
, 11 Ill. 2d 227, 142 N.E.2d 5 (1957) (holding that the arson-related death of an arson coconspirator was not intended and was therefore an "accident" within the meaning of an accident insurance policy).  The record establishes that Martin did not foresee the deaths or intend any bodily injury or death.

We agree with the trial court's assessment that the facts of this case reflect "an unintended result of an intended act."  Accordingly, we conclude that the occurrence at issue amounted to an accident.  Not only was there a potential of coverage under this policy relative to State Farm's duty to defend Martin, but we conclude that State Farm's policy in fact provides liability coverage for the unintended accidental deaths of the two firemen.  Furthermore, coverage is not excluded by the "expected or intended" clause of State Farm's policy.

We next turn to State Farm's contention that its "willful and malicious acts" policy exclusion bars coverage for this occurrence.  State Farm's policy excludes coverage for bodily injury caused by an insured's willful and malicious acts but then fails to define those terms.  In its brief, State Farm offers no definition of the term 
willful
.  We turn to case law for the definitions.  
Willful
 has been interpreted in a criminal context to mean a conscious awareness that the act in question is practically certain to cause a particular result.  
People v. Pratt
, 213 Ill. App. 3d 69, 75, 571 N.E.2d 1190, 1195 (1991).  
Malice
 has been defined to mean "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent."  
Aetna Casualty & Surety Co. v. Freyer
, 89 Ill. App. 3d 617, 622, 411 N.E.2d 1157, 1161 (1980), quoting Blacks Law Dictionary (4th ed. 1951).  Illinois cases define it as "an intent to do wrongful harm and injury and without just cause" (
Freyer
, 89 Ill. App. 3d at 622, 411 N.E.2d at 1161, quoting 
Candalaus Chicago, Inc. v. Evans Mill Supply Co.
, 51 Ill. App. 3d 38, 47, 366 N.E.2d 319, 326 (1977)), as "[a] wrong inflicted on another with an evil intent or purpose *** [requiring] the intentional perpetration of an injury or wrong on another" (
Freyer
, 89 Ill. App. 3d at 622, 411 N.E.2d at 1161, quoting 
First National Bank of Flora v. Burkett
, 101 Ill. 391, 394 (1882)), and as "an intent to do a wrongful harm and injury" (
Freyer
, 89 Ill. App. 3d at 622, 411 N.E.2d at 1161, quoting 
Doremus v. Hennessy
, 176 Ill. 608, 615, 52 N.E. 924, 926 (1898)).

The trial court analyzed this issue in the same manner as it did with the "expected and intended" exclusion.  We agree with that analysis.  State Farm accurately argues that in assessing this exclusion's applicability, we must focus on the insured's conduct.  Martin did not intend to kill two firemen or expect that their deaths would occur.  He did intend to burn his building and collect the proceeds of his State Farm policy relative to the building's worth.  This case presents a unique factual situation.  For Martin's intent to burn his building, he should be precluded from property damage coverage under his State Farm policy.  An insured should not be allowed to consciously control covered insurance risks through intentional acts.  
Freyer
, 89 Ill. App. 3d at 620, 411 N.E.2d at 1159.  To hold otherwise would circumvent the very purpose of insurance.  
Freyer
, 89 Ill. App. 3d at 620, 411 N.E.2d at 1159.  But to also exclude coverage for injuries sustained by the families of the firemen sets a dangerous precedent.  This is not a specific-intent-crime coverage issue.  We do not permit defendants to argue that they are entitled to insurance coverage for the unintended physical or psychological damage that their sexual abuse victim suffers (See 
Watters
, 268 Ill. App. 3d at 507, 644 N.E.2d at 496-97) or the unexpected specific type of injuries that the victim sustained in a typical fistfight (See 
Freyer
, 89 Ill. App. 3d at 622, 411 N.E.2d at 1161).  Those cases involve direct involvement with the victim with intended acts upon that victim.  Their specific intent to harm is inferred as a matter of law.  If the injury is slightly different or greater than the defendant expected, he should not be covered for those differences under an "unexpected" or "unintended" theory.  As this case involves an issue different from the intent-based crimes, the "willful and malicious acts" policy exclusion does not bar coverage.

State Farm also contends that insurance coverage for the arson-related activities is against public policy and is thus void.  State Farm cites no Illinois authority for this contention.  The four cases State Farm cites as authority are from other states.  All four cases are distinguishable in that none involve an arson-related death.  
State Farm Fire & Casualty Co. v. Hackendorn
, 605 A.2d 3 (Del. 1991) (assault with a gun); 
Altena v. United Fire & Casualty Co.
, 422 N.W.2d 485 (Iowa 1988) (sexual abuse); 
Perreault v. Maine Bonding & Casualty Co.
, 568 A.2d 1100 (Me. 1990) (sexual abuse); 
Atlantic Employers Insurance Co. v. Tots & Toddlers Pre-School Day Care Center, Inc.
, 239 N.J. Super. 276, 571 A.2d 300 (1990) (sexual abuse).  

Illinois public policy clearly prevents Martin from recovering policy proceeds for the building's worth, given his involvement in the arson of that building.  See 
University of Illinois v. Continental Casualty Co.
, 234 Ill. App. 3d 340, 359, 599 N.E.2d 1338, 1351 (1992); 
Checkley v. Illinois Central R.R. Co.
, 257 Ill. 491, 496-97, 100 N.E. 942, 944 (1913).  However, our supreme court has held that interpreting an insurance contract to provide coverage for an intent-based act violates no established public policy of this state.  
Dixon Distributing Co. v. Hanover Insurance Co.
, 161 Ill. 2d 433, 446-47, 641 N.E.2d 395, 401-02 (1994); 
Taylor
, 11 Ill. 2d at 230, 142 N.E.2d at 6.  Furthermore, public policy encourages the compensation of victims.  
University of Illinois
, 234 Ill. App. at 358, 599 N.E.2d at 1350.

If Martin was seeking coverage for intentionally caused injuries or to profit from his arson involvement, no court would hesitate to find that such coverage was beyond the intent of the parties.  Given our analysis on the coverage issues and the public policy encouragement of victim compensation, we find no public policy obstacle with finding liability coverage for the unintended and unexpected outcome of Martin's acts.

We find that no genuine issue of material facts exists, and for the foregoing reasons, the judgment of the circuit court of Madison County is hereby affirmed.

Affirmed.

WELCH, P.J., and CHAPMAN, J., concur.

FOOTNOTES
1:
Other cases use the term 
seek
 in place of the term 
secure
.  See, 
e.g.
, 
Waste Management, Inc. v. International Surplus Lines Insurance Co.
, 144 Ill. 2d 178, 207-08, 579 N.E.2d 322, 335 (1991); 
Murphy v. Urso
, 88 Ill. 2d 444, 451, 430 N.E.2d 1079, 1082 (1981).