Docket No. 85659–Agenda 7–January 1999.

STATE FARM FIRE & CASUALTY COMPANY, Appellant
, 
v
.

 GREGORY LEE MARTIN, SR., 
et al
., Appellees.

Opinion filed April 15, 1999.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiff-appellant, State Farm Fire and Casualty Company (State Farm), filed a declaratory judgment action in the circuit court of Madison County seeking a determination of whether it owed its insured, Gregory Lee Martin, Sr. (Martin), a defense and indemnification in two underlying wrongful death suits. The trial court found that State Farm had a duty to defend and indemnify Martin, and State Farm appealed. The appellate court affirmed the decision of the trial court (296 Ill. App. 3d 466), and we granted leave to appeal.

BACKGROUND

This case originated with an arrangement between Martin and Delaney Gordon, Sr., to destroy a building owned by Martin. Gordon was one of Martin’s tenants, and in exchange for his participation, Martin offered him a reduced rental rate. On October 24, 1992, at approximately 2 a.m., Gordon ignited the fire by leaving an unattended candle in a hamper in the basement. An accelerant was also used. During the ensuing blaze, firefighters Timmie Lewis and Gary Porter were killed. Thereafter, Martin was indicted by a federal grand jury for “maliciously damaging and destroying by means of fire, [Martin’s] building ***, and as a direct and proximate result of this conduct, death resulted to Gary Porter and Tim Lewis, both firemen in Alton, Illinois; all in violation of Title 18, United States Code, Section 844(i).” 

In June and July of 1993, respectively, Scott Lewis, special administrator of the estate of Timmie Lewis, and Ethelyn J. Gorham, executrix of the estate of Gary Porter, each filed wrongful death suits against Martin in the circuit court of Madison County. Martin tendered defense of both complaints to State Farm under his rental dwelling insurance policy. Because of Martin’s arson, however, State Farm denied coverage under the policy and refused to defend Martin. State Farm then filed a complaint seeking a declaration that it owed no duty to defend or indemnify Martin. The complaint named Martin, Lewis, and Gorham as defendants. In the complaint, State Farm alleged that the underlying actions did not constitute a covered “occurrence” as defined in the policy and that Martin’s action triggered two coverage exclusions. Defendant Gorham sought a stay of the declaratory judgment proceedings pending resolution of the federal criminal cases then pending against Martin and Gordon (defendant Lewis had not yet answered State Farm’s declaratory judgment petition and thus did not file a motion to stay). Over State Farm’s objection, the trial court granted the stay on February 23, 1994. The court’s order provided that any party could move to lift the stay after the criminal cases had been resolved.

In September 1994, Martin was found guilty on the criminal charge, and in December 1994, Martin was sentenced to 50 years’ imprisonment. Although the record contains no order lifting the trial court’s stay in the declaratory judgment action, State Farm filed a motion for summary judgment in that action on April 18, 1995. In an order dated August 30, 1995, the trial court found that coverage existed and denied State Farm’s motion. On October 4, 1995, the trial court granted summary judgment in favor of defendants and against State Farm.

In the meantime, on August 8, 1995, the trial court in the wrongful death case entered a default judgment against Martin on Gorham’s complaint in the amount of $10 million. On September 5, 1995, the trial court entered a default judgment against Martin on Lewis’ complaint in the amount of $9 million.

State Farm appealed the decision of the trial court in the declaratory judgment action. The appellate court opined that State Farm was estopped from denying coverage because the company had failed to secure a declaratory judgment before default judgments were entered in the wrongful death suits. 296 Ill. App. 3d at 470. Nevertheless, the appellate court declined to decide the case on an estoppel theory, but rather went on to hold that State Farm’s policy substantively did require the company to indemnify Martin for his liability arising from the deaths of the two firemen. Accordingly, the appellate court affirmed the judgment of the circuit court.

Now before this court, State Farm maintains that the circuit and appellate courts erred in finding that State Farm had a duty to defend and indemnify Martin. State Farm argues that Martin’s actions in hiring his tenant to set fire to the building are outside the scope of coverage under its rental dwelling policy. In addition, State Farm contends that the allegations of the wrongful death complaints trigger two coverage exclusions contained in the policy. Accordingly, State Farm argues that it had neither a duty to defend nor a duty to indemnify Martin. As an initial matter, however, the parties disagree over whether State Farm is entitled to deny coverage at all. Defendants Gorham and Lewis argue that State Farm should be estopped from denying coverage because the company breached its duty to defend Martin.

ANALYSIS

As this court has repeatedly held,“[w]hen a complaint against the insured alleges facts within or potentially within the scope of the policy coverage, the insurer taking the position that the complaint is not covered by the policy must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage.” 
Clemmons v. Travelers Insurance Co.
, 88 Ill. 2d 469, 475 (1981); 
Waste Management, Inc. v. International Surplus Lines Insurance Co.
, 144 Ill. 2d 178, 207-08 (1991); 
Murphy v. Urso
, 88 Ill. 2d 444, 451 (1981); see also 
Sims v. Illinois National Casualty Co.
, 43 Ill. App. 2d 184, 199 (1963). If the insurer fails to take either of these actions, it will be estopped from later raising policy defenses to coverage. 
Clemmons
, 88 Ill. 2d at 475; 
Waste Management
, 144 Ill. 2d at 207-08; 
Murphy
, 88 Ill. 2d at 451;  see also
 Sims
, 43 Ill. App. 2d at 199. In the instant case, the parties do not dispute that State Farm did, in fact, seek a declaratory judgment as to its duties to Martin under its insurance policy. Nevertheless, defendants Gorham and Lewis argue that the rule cited above should be construed so as to require an insurance company to actually 
secure
 a declaratory judgment or defend under a reservation of rights. In support of their position, defendants cite 
Country Mutual Insurance Co. v. Murray
, 97 Ill. App. 2d 61 (1968), in which the appellate court held:

“[I]n a situation where the personal injury action reaches judgment before the declaratory judgment action achieves fruition and finality *** [the insurance company] must;

(1) 
Secure
 a declaratory judgment of its rights and obligations while defending its potential insured on a reservation of rights, or

(2) Defend its potential insured on a reservation of rights and adjudicate its coverage in a supplemental suit.” (Emphasis in original.) 
Country Mutual
, 97 Ill. App. 2d at 73. 

Defendants also cite several appellate court cases in which courts have quoted the “secure a declaratory judgment” language without further analysis. See, 
e.g
.,
 Consolidated R. Corp. v. Liberty Mutual Insurance Co.
, 92 Ill. App. 3d 1066, 
1073 (1981); 
Associated Indemnity Co. v. Insurance Co. of North America
, 68 Ill. App. 3d 807, 821 (1979).

In reply, State Farm argues that it properly preserved its right to deny coverage by 
seeking
 a declaratory judgment as to its responsibilities under the insurance policy. State Farm points out that this court has never adopted the language or the rule proposed by defendants. Moreover, a clear majority of Illinois courts which have expressly considered the argument now made by defendants have rejected it. 
Industrial Coatings Group, Inc. v. American Motorists Insurance Co.
, 276 Ill. App. 3d 799 (1995); 
Gibraltar Casualty Co. v. Sargent & Lundy
, 214 Ill. App. 3d 768 (1990); 
Insurance Co. v. Markogiannakis
, 188 Ill. App. 3d 643 (1989); 
Ayres v. Bituminous Insurance Co.
, 100 Ill. App. 3d 33 (1981). State Farm also argues that the rule advanced by defendants would effectively require insurance companies to defend their purported insureds in 
all 
cases, even where the underlying complaints are clearly outside the scope of the policy. According to State Farm, such a holding would represent an unprecedented and unwarranted expansion of an insurer’s duty to defend. We agree.

This court has consistently identified two options for an insurer taking the position that a complaint potentially alleging coverage is actually not covered under its insurance policy: the insurer may either “defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage.” 
Clemmons
, 88 Ill. 2d at 475; 
Waste Management
, 144 Ill. 2d at 207-08; 
Murphy
, 88 Ill. 2d at 451; see also 
Sims
, 43 Ill. App. 2d at 199. These are separate and distinct options. To argue, as defendants do, that an insurer choosing the latter option is estopped from denying coverage unless he actually
 secures
 a declaratory judgment before judgment is entered on the underlying tort complaint is to render the declaratory judgment option illusory. Such a rule would force insurers into a race in which they must obtain declaratory relief before the underlying tort suits proceed to judgment.

Moreover, defendants’ rule would give both the potential insured and the tort plaintiff an incentive to resolve the tort suit 
before
 the declaratory judgment action. An insurer in such a position would be at an extreme disadvantage. First, while the insurer would not be in a position to affect the course of the tort suit, both the potential insured and the tort plaintiff, as proper and necessary parties to the declaratory judgment action (
Williams v. Madison County Mutual Automobile Insurance Co
., 40 Ill. 2d 404, 407 (1968)), could exercise considerable influence over the progress of the declaratory judgment action. While we attribute no improper motive to defendants in the instant case, we note that defendant Gorham sought and obtained a lengthy stay of State Farm’s declaratory judgment action–a delay which State Farm opposed. Second, under defendants’ rule, a potential insured with a dubious claim to insurance coverage could effectively force his insurance company to provide him with a defense by the simple expedient of refusing to answer the complaint in the underlying tort suit. Under such circumstances, an insurer would have no realistic choice but to immediately defend its potential insured or risk entry of a default judgement for which it would subsequently be estopped from denying coverage.

For all of these reasons, we reaffirm that when a complaint against the insured alleges facts potentially within the scope of the policy coverage, an insurer taking the position that the complaint is not covered by its policy must defend the suit under a reservation of rights 
or
 seek a declaratory judgment. An insurer will not be estopped from denying coverage merely because the underlying case proceeds to judgment before the declaratory judgment action is resolved. Accordingly, we hold that State Farm did not breach its duty to defend Martin, and is therefore not estopped from raising policy defenses to coverage.

We therefore turn the question of actual coverage under State Farm’s business liability policy. State Farm defends its denial of coverage on four grounds: (1) that the underlying complaints did not allege a covered “occurrence” within the meaning of the policy because the fire was not an accident; (2) that Martin’s actions triggered an exclusion for bodily injury that is expected or intended by the insured; (3) that Martin’s actions triggered an exclusion for bodily injury that is the result of willful and malicious acts of an insured; and (4) that insurance for the civil consequences of arson is void as against the public policy of Illinois. Because we find that State Farm properly denied coverage based upon the “willful and malicious” exclusion, we do not reach the remaining arguments.

State Farm’s insurance policy contained the following coverage exclusion:

“1. Coverage L–Business Liability and Coverage M–Premises Medical Payments do not apply to:

a. bodily injury, personal injury, or property damage:

(1) which is either expected or intended by an insured; or

(2) to any person or property which is the result of willful and malicious acts of an insured ***.”

State Farm asserts that Martin’s acts in hiring his tenant to commit arson are willful and malicious as a matter of law, and therefore are excluded from coverage under the policy. State Farm argues that the appellate court erroneously equated the “willful and malicious” exclusion with the “expected or intended” exclusion when it held that Martin’s acts were not “willful and malicious” within the meaning of the policy unless Martin acted with a “specific intent to cause personal injury [to the firemen] with conscious knowledge that the deaths were practically certain to occur.” (Emphasis omitted.) 296 Ill. App. 3d at 472. State Farm further maintains that Martin’s criminal conviction of “maliciously damaging and destroying [his building] by means of fire” is 
prima facie
 evidence
 of the nature of Martin’s conduct where malice was an element of the offense charged.

In response, defendants argue that because the terms “willful and malicious” are not defined by the policy, the policy is therefore ambiguous and should be construed against the drafter, State Farm. Defendants also cite testimony from Martin’s criminal trial to the effect that Martin and his accomplice had not intended to injure anyone and, in fact, “were going through hell about those two firemen who got killed.” Defendants claim that this testimony establishes that Martin did not intend to do any harm to the deceased firemen, and therefore Martin’s acts were not “willful and malicious” towards decedents.

We find defendants’ arguments unpersuasive. Defendants clearly equate the “willful and malicious” exclusion with the “expected or intended” exclusion. Similarly, the appellate court’s discussion of the “willful and malicious” exclusion concluded: “The trial court analyzed this issue in the same manner as it did the ‘expected and intended’ exclusion. We agree with that analysis.” 296 Ill. App. 3d at 473. Not surprisingly, therefore, the appellate court’s discussion of the “willful and wanton” exclusion focuses almost exclusively on cases construing exclusions for injuries which are “expected or intended.” The appellate court’s approach was, however, incorrect. 

When construing an insurance contract,“[a] court must strive to give each term in the policy meaning unless to do so would render the clause or policy inconsistent or inherently contradictory.” 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 123 (1992). In the instant case, the language of State Farm’s policy excludes coverage for injuries which are “expected or intended” 
or
 “which [are] the result of willful and malicious acts of an insured.” By use of the conjunction “or,” the policy unambiguously indicates that each of the two exclusionary clauses must be given its own meaning. Accordingly, the applicability of the “willful and malicious” exclusion cannot be made to depend upon whether Martin subjectively “expected or intended” to injure the decedent firemen.

State Farm’s policy excludes coverage for injuries “which [are] the result of 
willful and malicious acts 
of an insured.” (Emphasis added.) Notably, the exclusion is not phrased in terms of willful and malicious 
injuries
. Accordingly, an assessment of this exclusion’s applicability requires a focus upon the 
acts 
of the insured–not upon the injuries of the tort plaintiffs. The only act from which Martin’s liability could have arisen was his act of hiring his tenant to set fire to the building. As defendants’ wrongful death complaints each allege: (1) Martin hired Gordon to start the fire, (2) Martin knew or should have known that firemen would respond to the fire and could be injured because of the fire; and (3) as a direct and proximate result of Martin’s acts, two firemen were killed. Although for strategic reasons Gorham and Lewis phrase their complaints in terms of negligence, it strains credulity to suggest that Martin’s acts were merely negligent. On the contrary, it is manifestly clear that defendants allege, and that Martin committed, an intentional, willful act. We further note that Martin was convicted of “maliciously damaging and destroying [his building] by means of fire.” Martin’s criminal conviction is 
prima facie
 evidence of the facts on which it was based. 
Thornton v. Paul
, 74 Ill. 2d 132, 151 (1978); see also 
Talarico v. Dunlap
, 177 Ill. 2d 185, 193 (1997). Under the circumstances of this case, we have little difficulty concluding that Martin’s actions were willful and malicious as a matter of law, and therefore fall within the policy’s exclusion.

CONCLUSION

For the reasons stated above, we hold that State Farm preserved its right to raise policy defenses to coverage by seeking a declaratory judgment as to its responsibilities under its policy of insurance. Further, we hold that Martin’s acts in hiring a tenant to set fire to Martin’s building, which ultimately resulted in the tragic deaths of two firemen, fall within an express coverage exclusion under State Farm’s policy. Accordingly, State Farm is not required to indemnify Martin for the civil liability resulting from his actions. The judgments of the appellate and circuit courts are reversed.

Judgments reversed
.

JUSTICE BILANDIC took no part in the consideration or decision of this case.

JUSTICE HARRISON, dissenting:

An insurer’s duty to defend is much broader than its duty to indemnify. 
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 393-94 (1993). An insurer may be required to defend its insured even when there will ultimately be no obligation to provide indemnification. 
Zurich Insurance Co. v. Raymark Industries, Inc
., 118 Ill. 2d 23, 52 (1987).

Whether an insurer has a duty to defend depends on a comparison of the allegations of the underlying complaint with the relevant provisions of the insurance policy. If the underlying complaint alleges facts within or potentially within the policy’s coverage, the insurer has a duty to defend. 
Dixon Distributing Co. v. Hanover Insurance Co.
, 161 Ill. 2d 433, 438 (1994). 
That is so even if the allegations are groundless, false or fraudulent. 
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 73 (1991).

The threshold that a complaint must satisfy to present a case of potential coverage is low. The allegations of the complaint must be liberally construed, and all doubts must be resolved in favor of the insured. See 
Trovillion v. United States Fidelity & Guaranty Co.
, 130 Ill. App. 3d 694, 700 (1985). An insurer cannot safely or justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the claim is beyond the policy’s coverage. 
Wilkin Insulation Co.
, 144 Ill. 2d at 73.

When an insured tenders the defense of a claim to its insurer, but the insurer does not believe that the policy affords coverage, the insurer may not simply abandon the insured. Rather, it must defend the insured under a reservation of rights and either secure a declaratory judgment as to its rights or else adjudicate the issue of coverage in a supplemental suit. 
Shelter Mutual Insurance Co. v. Bailey
, 160 Ill. App. 3d 146, 151-52 (1987); 
Consolidated R. Corp. v. Liberty Mutual Insurance Co.
, 92 Ill. App. 3d 1066, 1072-73 (1981); 
Graman v. Continental Casualty Co.
, 87 Ill. App. 3d 896, 900 (1980); 
Associated Indemnity Co. v. Insurance Co. of North America
, 68 Ill. App. 3d 807, 821 (1979); 
Aetna Casualty & Surety Co. v. Coronet Insurance Co.
, 44 Ill. App. 3d 744, 748 (1976). Of course, it may also defend without a reservation of rights. 
Tapp v. Wrightsman-Musso Insurance Agency
, 109 Ill. App. 3d 928, 930 (1982). Whichever of these options it elects, however, it still must defend the insured. That duty does not abate unless and until there has been an adjudication that no defense is owed under the policy.

If an insurer obtains a declaratory judgment prior to trial or settlement which frees it from its obligation to provide a defense, its responsibility for defending its insured will, of course, terminate. The mere filing of a declaratory judgment action, however, does not relieve an insurer of its responsibilities. Although there is some authority to the contrary, that view is not and has never been the prevailing view in Illinois. It is a doctrine which has been limited to a few divisions of the First District of the Appellate Court and some opinions from the Third District,
 e.g
., 
Ayres v. Bituminous Insurance Co.
, 100 Ill. App. 3d 33 (1981), which misconstrued the precedent.

Admittedly, our own court has been lax in formulating the insurer’s duty to provide a defense. In cases such as 
Employer’s Insurance of Wausau v. Ehlco Liquidating Trust
, No. 84684, slip op. at 18 (January 22, 1999), we have articulated the rule as if filing a declaratory judgment action and defending under a reservation of rights were merely independent alternatives. It is important to recognize, however, that before today we have never actually held that an insurer can escape the consequences of refusing to provide a defense merely by initiating a separate declaratory judgment action. The majority’s suggestion that today’s decision “reaffirms” our previous holdings is simply wrong.

The doctrine embraced by my colleagues in this case fundamentally alters the law in Illinois. In the end, it will accomplish nothing other than to advance the pecuniary interests of the insurance industry. Why the majority has decided to follow such a course is unclear to me. There is no demonstrable basis for concluding that the insurance industry needs any greater protection under the law than it already receives. The fears of collusion or forced races to judgment cited by the majority are illusory. The notion that insurance companies will somehow be exploited by plotting policyholders is manufactured. In my experience, it is the policyholders who normally need protection from the insurers, not the other way around.

In urging the position my colleagues adopt today, State Farm argued that it was at risk of having to provide a defense in all cases, even where the underlying complaints are clearly outside the scope of the policy. The majority accepted this proposition uncritically, but it is completely false. What the law actually provided, until today, was that the duty to provide a defense, while broad, was not absolute. As previously indicated, an insurer was not obligated to provide a defense where it was clear from the complaint that the claim was beyond the policy’s coverage.

If the majority was concerned about insurers having to provide a defense in every case, today’s decision takes us to the opposite extreme. Under this ruling, insurance companies will no longer be required to expend any portion of the premiums they collect in order to meet their contractual obligation to provide defenses to their insureds. As soon as they learn that an insured has been sued, all they will have to do is have their attorneys prepare and file a complaint for declaratory judgment challenging coverage. With the filing of that complaint, their duty to defend the insured will cease. Even if no further action is ever taken on the declaratory judgment action, they will be excused from securing counsel to appear on behalf of their policyholder. For all practical purposes, their duty to defend will be rendered a nullity. 

Insureds are entitled to more than this. They have paid for more and the law requires more. I would therefore hold that State Farm was obligated to defend Martin in this case. Because it did not, it should be estopped from raising policy defenses to Martin’s claim for indemnification. See, 
e.g
.,
 Country Mutual Insurance Co. v. Murray
, 97 Ill. App. 2d 61, 73-74 (1968).

For the foregoing reasons, the judgments of the circuit and appellate courts should be affirmed.