(No. 31732.—

Betty Secaur, Appellee, *vs.* Illinois State Civil Service Commission *et al.,* Appellants.

*Opinion filed January 18, 1951.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (ROBERT J. BURDETT, JOHN T. COBURN, and A. ZOLA GROVES, all of Chicago, of counsel,) for appellants.

LESTER B. MARSHALL, of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellee, Betty Secaur, was, on July 17, 1946, certified under the Illinois State Civil Service·Act as a field investigator for the· Illinois Public Aid Commission, a position she held until January 1, 1949, when she was transferred to a like position in the Department of Registration and Education. On March 18, 1949, she received a notice by mail from the latter department stating that she was discharged for the following reasons: "Mrs. Betty Secaur did not perform any service for our Department. Inquiry discloses she is unknown to any of the personnel of our Department." Following this, appellee requested, and was awarded, a hearing before the commission as provided by the Civil Service Act. (Ill. Rev. Stat. 1947, chap. 24½, par. 14.) That body found that her discharge from the department was for just cause and was final. Appellee then instituted administrative review proceedings in the superior court of Cook County, which tribunal entered an order reversing the decision of the commission, holding that there was no just cause for appellee's discharge, that the decision of the commission was contrary to law and not supported by the evidence. The State being an interested party, a direct appeal is made to this court by the commission and department director who contend that absence from work is just cause for discharge, and that the decision of the commission was supported by the manifest weight of the evidence. Appellee admits that she did no work from January 1, to March 18, 1949, but contends that

although she was available for work and frequently requested duties, she was forced not to work during this period because no duties were assigned to her, and that in such case failure to work could not constitute absence from work.

In the hearing before the commission some evidence was given which bore on appellee's period of service with the Public Aid Commission. However, we shall consider only that evidence which relates to the cause stated in the notice of discharge which, in turn, relates solely to her period of service with the Department of Registration and Education. For the department, Ellen Buttell, a receptionist in its Chicago office both before and after January 1, 1949, testified that she did not know appellee and had never seen her in the office or received a telephone call from her; that in January, 1949, a pay check arrived at the office payable to appellee, and that on inquiry, she was informed by E. O. Holly, the office manager, that the Springfield office had verified that appellee was to work in the department and was on the payroll, but, he stated, was to be assigned no work because the administration was changing and they were not going to bother to break her in.

Harry Hebner, who replaced Holly as office manager on February 25, 1949, said he had never seen appellee until the hearing but admitted talking on the telephone to her about March 1 relative to her February pay check. He testified that when appellee's check for February arrived, he asked Mrs. Buttell who appellee was, and learned that she was on the pay roll; that he then called Noble Puffer, director of the department in Springfield, who advised him that appellee was not on the pay roll. The next testimony of the witness was, however, that in the first week of March he was told by the Springfield office to take the necessary steps to take appellee off the pay roll; he then inquired of other employees if appellee had done any work for the department or if she was known to anybody in his

office, and upon receiving negative replies, filed dismissal charges against appellee. When questioned by the hearing officer for the commission, Hebner testified that field investigators did not report to him; that he did not know or assign their duties, but that such matters were the responsibility of the chief investigator. Gus Jacobson, the chief investigator, who did not assume his duties until March 1, 1949, and his assistant, Arthur W. Nimmer, a long-time employee of the department, both testified that appellee was not on their list of investigators; that she had not reported and that she had been assigned no duties. Nimmer testified that field investigators reported to him every day.

Appellee, testifying in her own behalf, stated that after being notified of her transfer from the Public Aid Commission to the Department of Registration and Education, she reported for work to Mr. Holly, the Chicago office manager for the department on January 2, 1949; that he told her he had been informed of her transfer, but that due to the illness of the department director, Frank Thompson, he had not been given word of what her duties were to be. She testified that she was told to keep reporting, which she did, at times filling in information forms given her, but that Holly continued to tell her that her work assignment was delayed by the director's illness. The witness estimated that outside her personal visits she made fifteen to twenty telephone calls to the office in January and February, inquiring about her work assignment. In the latter part of February, she called the office, and inquired of Hebner, who was Holly's successor, about her February check. She stated that Hebner asked her what her duties were; that she told him she had done nothing and was quite concerned because she had heard nothing of what her duties were to be, and was then informed that the check had been taken back to Springfield. She further testified that she attempted to call Thompson in Spring-

field but was referred to Fred Ruegg; that Ruegg was out of town, so she told his secretary about not having received a work assignment or a check, and was told that the matter would be taken care of. However, she heard nothing further from anyone, until she received notice of her discharge.

The foregoing testimony of appellee was almost completely corroborated by that of Holly. He told of her transfer to the department and testified that when she reported January 2, 1949, he told her "she was to be given some assignment at a little later date, and she was to stand by until she either heard from us or I, also, told her to come in and that we may hear something in the meantime, which we could convey to her." He further testified that appellee either came in or telephoned several times a week until he left the department in February, and that she had filled out the office records required by Springfield; that he did not assign her any work because he was following instructions of the department's director that a special assignment for appellee was to be made from Springfield; that on leaving his position he told appellee that Mr. Thompson would communicate with her and that he did not know what the new administration had in mind for her or anybody else.

Noble Puffer, who succeeded Thompson as director of the department on February 16, 1949, was called by appellee as an adverse witness. He testified that appellee first came to his knowledge on February 25 when he saw an envelope containing her check; that he made inquiries concerning her, and upon learning from the voucher clerk that appellee was an employee, he directed that the check be mailed to her; that he did not communicate with appellee; found no record of her performing any duties, and that he signed the notice of termination of her services on March 16. To complete appellee's evidence, there was introduced into the record, a certified copy of her certification as a field investi-

gator II on July 13, 1946, and a certified copy of the order transferring her from the Public Aid Commission to the Department of Registration and Education as of January 1, 1949. The latter transfer was approved by the Civil Service Commission on January 19, 1949.

From the foregoing facts, the hearing officer, whose report was approved by the commission, found generally that appellee was transferred to the Department of Registration and Education on January 1, 1949; that she was paid her salary for January but no work was assigned to her; that she reported frequently for duty during the month of January and that the department had ample notice of her availability for work assignment; that she received a pay check for February and that she reported for duty several times during that month but no work was assigned to her; that a new director of the department took office on February 16, 1949, and new supervisors started to work the latter part of that month; that the last time appellee reported to any of the new officials was on February 25, 1949, when she called about her check and stated that she was willing to accept any work assignment given her. The hearing officer specifically found that appellee had failed to report for work for the period between February 25 and March 18, 1949, and relying on Rule 7.2(b) of the Illinois State Civil Service Commission, which provides: "An employee absent from duty without leave for a period of three (3) successive days or longer without the proper notice to, and approval of, his superior officer, of the reason for such absence shall be considered to have resigned," found that appellee's discharge was for just cause, and recommended that it be final.

There is no dispute about the finding of facts, but rather the main question presented to this court by the record is whether such facts show a just cause for discharge. While courts of review which are considering the findings of fact made by an administrative body do not have the right to

reweigh the evidence in the cause appealed from, (*Drezner v. Civil Service Com.* 398 Ill. 219,) still they do have the power and duty to consider the record to determine if the findings of the administrative agency are against, or supported by, the manifest weight of the evidence. (*Illinois Central Railroad Co. v. Franklin County,* 387 Ill. 301.) In past cases of this nature we have held, under certain facts, that absence from work constituted just cause for discharge, (*Kammann v. City of Chicago,* 222 Ill. 63; *Sullivan v. Lower,* 234 Ill. 21,) yet under different circumstances we have held that absence was not just cause. (*People ex rel. Polen v. Hoehler,* 405 Ill. 322.) In the latter case we considered the rule of the State commission, relied upon by the hearing officer in this case, which states that three successive days of absence, without notice and approval, is construed as resignation, or, in other words, involuntary discharge. In the *Polen case,* we found the rule to be arbitrary, unreasonable and contrary to law in its application to the facts of that case. A consideration of these past decisions and the facts of this case leaves us with the conviction that the record does not show an absence from work which is within the meaning of the civil service rule, or which constitutes a just cause for discharge. In considering this point, it must be borne in mind that the notice of discharge given to appellee, and upon which she had a hearing, gave as reason for her discharge, first, that she had not performed any services for the department, and, second, that she was unknown to any of the personnel of the department. We cannot conceive that the second ground announced by the notice would constitute a just cause for discharge, nor does appellants' argument seek to rely on such ground.

Looking at what the opinion in the *Polen case* observes to be "the practical standpoint," it is difficult to envision that appellee's failure to work can be called absence from work. Appellants' argument, and the findings of the hearing officer, both tacitly admit that appellee made sufficient

tender of service from January 1 to February 25, 1949, to forestall her discharge under the commission rule, but it is urged that her failure to report or tender her services between February 25 and March 18, the date she received the notice of discharge, shows absence from work and just cause. Prior to February 25, appellee's efforts to receive a work assignment were met by the representations of her superiors that she was to receive a special assignment from Springfield. She was assured that she would be notified of such an assignment either by the Chicago office or by the director of the department in Springfield. When the administration underwent a change in late February, such notification had not been received, and when she inquired of the new Chicago office manager about her duties and her check, she received only an answer that her check had been returned to Springfield, and her informant terminated the conversation by hanging up the telephone. This source of information failing, she pursued the matter to the fullest extent that she could by calling the office of the department director in Springfield, and though her inquiry reached only the ears of the secretary to the superintendent of registration, she received an assurance, on which she was entitled to rely, that the matter of her check and duties would be taken care of.

While not conclusive, the actions of the department and its new supervisors with regard to appellee between February 25 and March 18 should not go unnoticed. When appellee's February check was received in Chicago, no apparent effort was made to contact appellee or to determine her personal status; instead it was returned to Springfield. The Springfield office told Hebner that appellee was not on the payroll, yet a few days later told him to take steps to remove her from it. Hebner admits that he talked to appellee, and her conversation with the Springfield office is not denied, yet the discharge notice seeks to bolster up

the absence-from-work charge by a charge that she was unknown to the department. Regardless of the facts, to balance a civil service employee's right to employment on so tenuous an objection as the latter would be most arbitrary and unreasonable. While Puffer, the new head of the department, could not be charged with complete knowledge of all the employees of his department throughout the State, it is apparent that he made no effort to learn of appellee's situation through his subordinates. It seems that all of the department's acts after February 25 were in utter disregard of appellee's existence and rights, even though their records showed her to be an employee. The response appellee received from her new superiors could be calculated to do no less than leave her confused and uncertain, particularly when her repeated demands for work had been met with a promise of notification of her assignment.

It is apparent from the testimony and actions of all the persons here involved that most of the uncertainty which attached to appellee's status was occasioned by the change in those who were her superiors and who were charged with assignment of her duties, reaching from the director of the department to the chief investigator of the Chicago office. Appellee was not bound to take the entire responsibility for knowledge that the administration of the department was in process of a change, and it must be said that the new director and supervisors were chargeable with the knowledge contained in the department's records. It is true that appellee must have been aware of the changes, but the department must have been equally as aware of her presence as an employee. Considering the entire record, appellee can not be said to have acted other than any reasonable person in her attempts to be assigned to duties. She met first with promises, then with complete rebuff. She could not have been absent from work when she was given no work to perform.

As we view it, absence from work is not the real issue here, but rather whether the unexplained and apparently unexcused failure to assign work to an employee is sufficient basis to discharge that employee on the ground that he or she is absent from work. We hold it is not, and the order of the superior court of Cook County, reversing the decision of the commission, is affirmed.

*Order affirmed.*