SECOND DIVISI0N

FEBRUARY 8, 2000

1-98-3289

WILLIAM PIECUCH, ) Appeal from the 

) Circuit Court

Plaintiff-Appellee ) of Cook County

)

v. )

)

COOK COUNTY SHERIFF'S MERIT ) No. 93 CH 9572

BOARD, JAMES P. NALLY, ARTHUR )

R. WADDY, PAULA M. DALEO, AND )

TERRENCE HAKE. ) The Honorable

) Aaron Jaffe,

Defendants-Appellants. ) Judge Presiding.

PRESIDING JUSTICE COUSINS delivered the opinion of the

court:

On September 17, 1993, the Cook County Sheriff's Merit Board (the Board) ordered the discharge of Cook County sheriff's deputy William Piecuch for excessive absenteeism and job abandonment.  Piecuch timely filed for administrative review, arguing that: (1) the Board did not have jurisdiction to hear the complaint against him since proceedings against him were not commenced within mandatory time limits set down by sections 3-7011 and 3-7012 of the Counties Code (the Code) (55 ILCS 5/3-7011, 3-7012 (West 1996)); (2) the Board's finding that there was cause for discharge was against the manifest weight of the evidence; and (3) the delays that he experienced before the commencement of proceedings and during their running had violated due process standards under the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV).

The circuit court reversed the Board's determination and ordered Piecuch reinstated.  Although the circuit court based its ruling on the jurisdictional issue, it stated additionally that it thought the other two issues also each provided sufficient grounds for reversal.  The Board appealed to this court.

BACKGROUND

In March 1987, Deputy Piecuch announced plans to run for Cook County sheriff against then-incumbent Sheriff O'Grady.  Deputy Piecuch was soundly defeated in the primary election.

In the summer of 1987, Deputy Piecuch claims that two assistants to the sheriff ordered him to sell $1,000 in tickets to a fundraiser for Sheriff O'Grady, warning him that he would have to "eat," that is, buy with his own money, any that he did not sell within two weeks.  Approximately two weeks later, Piecuch claims, they returned to find that he had only sold $100 worth of tickets.  According to Piecuch, O'Grady's assistants then took the $100 and the unsold tickets and said "Oh that's the way it's going to be."

During this period Deputy Piecuch was working in the parking lot across the street from the courthouse at 26th and California.  On September 15, 1987, a person awaiting trial escaped from the courthouse.  Piecuch saw the man flee the building pursued by four or five deputies, who yelled for someone to stop the man.  Deputy Piecuch left his post, joined in the pursuit and, he claims, captured the fugitive.  At the hearing, Deputy Santos Perez, a rebuttal witness, claimed that he, not Piecuch, had been the one who apprehended the man.  However, he did recall that Deputy Piecuch participated in the pursuit.

The next day, Piecuch recounts, his supervisor, Jose Cruz, commended him for his role in the capture.  Two days later, however, Cruz told him that he was being transferred to a courthouse at Maywood.  According to Piecuch, when he asked why, Cruz replied that it was because he had left his post in the parking lot without permission.  Although Maywood was closer to Piecuch's home, he enjoyed his job at 26th and California and did not want to go elsewhere.

The sheriff introduced evidence before the Board that over 100 other deputies had been transferred at the same time as Piecuch.  The sheriff maintains that the transfer was part of a general reorganization and had nothing to do with Piecuch individually.

Piecuch says that stress related to his job as a sheriff's deputy was having an adverse effect on his health.  On September 21, 1987, the date that he was scheduled to start at Maywood, Piecuch called in sick and went to see a doctor.  The doctor found Piecuch to be suffering from nausea, insomnia, headaches and other stress-related symptoms and recommended that he take off a week from work.

Piecuch called in sick each day at the same time.  He used his last accumulated sick day on September 21 and his last personal day on September 22.  On October 1, two deputies came to Piecuch's home to confiscate his credentials, 
i.e.
, his badge and department identification card.  He told the deputies that he did not have his credentials there.  The next day he went in to the personnel department and turned in the credentials.  The parties agree that a uniformed deputy is not allowed to work without his or her badge and department identification.

The sheriff maintains that Piecuch's credentials were taken pursuant to general orders 3401 and 3405 of the court services department rules and regulations.  Order 3401 states "no employee shall be absent without leave.  Absence without leave shall mean either a failure to report for duty at the time and place of duty or leaving a place of duty or assignment without proper authorization."  Order 3405 allows the court services department to retrieve credentials of an employee who is absent without leave for two days.

Piecuch says that he asked the personnel director, James Hogan, why his credentials were being taken.  According to Piecuch, Mr. Hogan replied that the credentials were being impounded pending an investigation by internal affairs into his leaving his post in the parking lot without permission, and that it would no longer be necessary for him to call in at Maywood.  

Piecuch testified that he nevertheless called in as usual for the next few days.  Chief Angelyn Parilli then instructed June Ferguson, the deputy who had been taking Piecuch's calls, to tell him to stop calling in.  Piecuch alleges that they told him to stop calling because he was no longer on the time sheets at Maywood.

At this time Piecuch was also working full-time as a postal employee.  He continued to work at the post office during the period when he called in sick and afterwards.

Piecuch alleges that he continually tried to contact Mr. Hogan in order to try to get his credentials back, but that Mr. Hogan would not see him or take his calls.  Piecuch says that he made about 65 calls and about 5 trips to the personnel office.  Mr. Hogan did not testify at the hearing.  However, Louise Terlep, assistant personnel director, testified that she did not recall seeing him at the department except when he first turned in the credentials.

On October 19, 1988,  Mr. Hogan sent Piecuch a letter saying that he was being removed from the payroll since he had not worked in several months.

On February 13, 1989, Piecuch sent a certified letter directly to Sheriff O'Grady asking for reinstatement.  He said that he still had not received an explanation for the confiscation of his credentials and that he had asked Mr. Hogan, as well as his state senator and state representative, but to no avail.

On March 28, 1988, an article about Deputy Piecuch appeared in the Southtown Economist.  The article quoted Piecuch as saying that he wanted to stay at 26th and California because "I enjoy joking around and talking to people at the parking lot.  It's a laugh a minute out there and I don't want to go anywhere else."  The article reported that an unnamed spokesman for Sheriff O'Grady told the author that Piecuch's problems stemmed from his failure to report to his new assignment.  The spokesman also reportedly said that the proper procedures to dismiss Piecuch were never completed, so the chances were good that he would be reinstated.

The day after the article appeared Sheriff O'Grady phoned Piecuch personally and told him to make an appointment to come in and discuss reinstatement.  Piecuch met with the director of internal affairs, Jerome Casserly, and an internal affairs investigator, Richard Renkas.  According to Renkas, Piecuch told them that he had met with Mr. Hogan in February or March and told him that he would not work at Maywood.  At the Board hearing, Piecuch said he had no recollection of such a conversation.

Director Casserly told Piecuch that in order to return to work he would have to pass a physical examination and sign a release.  The next day Piecuch underwent the physical exam.  A few days later Piecuch met with Investigator Renkas.  Renkas showed him the release, but Piecuch refused to sign it.  According to the release, Piecuch was to come back as a probationary employee without seniority, back pay or benefits.  Probationary employees are not merit protected and, thus, may be terminated for any reason.  

On April 19, 1989, Piecuch met once again with Casserly and Renkas.  He once again refused to sign the release.  Renkas' notes say that Mr. Piecuch was under the impression, and Director Casserly agreed, that he had never resigned or been fired.  Casserly suggested that Piecuch consult with his lawyer about the release and call back in a week.

On April 25, 1989, Piecuch's attorney sent a letter to Sheriff O'Grady.  The letter stated that Piecuch wished to return to work and noted that, although his credentials had been confiscated, he had never received any notice or hearing and had not been officially disciplined or terminated.

On July 19, 1989, Sheriff O'Grady's legal assistant sent a letter to Piecuch's attorney asking him to decide by July 31 whether he wished to accept the offer to return to work after signing the release.

On August 8, 1989, Director Casserly sent Piecuch a letter stating that an internal affairs investigation had been opened on him and that he was relieved of duty with pay pending a disciplinary hearing.  On October 13, 1989, Sheriff O'Grady sent Piecuch a note informing him that he was suspended without pay pending a dismissal hearing before the Board.  On November 8, 1989, formal charges were filed against Deputy Piecuch.  The next day Piecuch was sent notice of a preliminary hearing before the Board.

On September 17, 1993, about 10 months after the completion of the disciplinary hearings, the Board entered an order terminating Piecuch for excessive absenteeism and job abandonment effective November 8, 1989.  Shortly afterwards Piecuch filed a petition for administrative review asking for his discharge to be overturned on three bases.  First, he argued that the Board did not have jurisdiction to hear the termination proceeding because the complaint had not been filed within the time limits set out by the Code.  55 ILCS 5/3-7011, 3-7012 (West 1996).  He also contended that the Board's finding of cause for dismissal was against the manifest weight of the evidence.  Finally, he argued that the delays that he experienced before the commencement of proceedings and during the proceedings had violated due process standards under the fourteenth amendment to the United States Constitution.

The circuit court reversed the Board's determination and ordered Piecuch reinstated.  Although the circuit court based its ruling on the jurisdictional issue, it stated additionally that it thought the other two issues that were set forth in the petition for administrative review also each provided sufficient grounds for reversal.  The Board appealed to this court.

We affirm.

DISCUSSION

As an initial matter, we note that the appellants' brief does not contain an appendix with the order appealed from and an index to the record as required by Supreme Court Rule 342 (134 Ill. 2d R. 342(a)).  Although we elect to consider the appeal on the merits, this court could dismiss the appeal because of these omissions.  
Collier v. Avis Rent A Car System, Inc.
, 248 Ill. App. 3d 1088, 1095, 618 N.E.2d 771, 776 (1993). 

I

The circuit court reversed the Board's order of termination, reasoning that the Board lost jurisdiction to hear the case since formal charges were not filed against Piecuch within 30 days of his suspension, in violation of sections 3-7011 and 3-7012 of the Code, which provide: 

“3-7011.  Disciplinary Measures.  Disciplinary measures prescribed by the Board may be taken by the sheriff for the punishment of infractions of the rules and regulations promulgated by the Board.  Such disciplinary measures may include suspension of any deputy sheriff *** for a reasonable period, not exceeding 30 days, without complying with the provisions of Section 3-7012 hereof.”

3-7012. Removal, demotion or suspension.  Except as is otherwise provided in this Division, no deputy sheriff *** shall be removed, demoted or suspended except for cause, upon written charges filed with the Board by the Sheriff and a hearing before the Board thereon upon not less than 10 days’ notice at a place to be designated by the chairman thereof.” 55 ILCS 5/3-7012, 3-7011 (West 1996).

The circuit court based its ruling on 
Zurek v. Cook County Police & Corrections Merit Board
, 42 Ill. App. 3d 1044, 356 N.E.2d 1079 (1976).  In 
Zurek
, two deputies were disciplined for injuring an inmate in the county jail.  Soon after the incident the sheriff summarily suspended the two employees.  Then, about six weeks later, the department notified the employees that formal charges had been filed with the merit board.  After a hearing, the merit board ordered that one employee be discharged and that the other be suspended for six months.  
Zurek
, 42 Ill. App. 3d at 1045, 356 N.E.2d at 1080. On administrative review, the circuit court found that the merit board had lacked jurisdiction since formal charges were not filed within 30 days of the commencement of the suspensions.  The appellate court agreed, holding that 30-day notice was mandatory. 
Zurek
, 42 Ill. App. 3d at 1047-48, 356 N.E.2d at 1082.

Here, however, the Board argues that it has not lost jurisdiction in light of the recent case, 
Armstead v. Sheahan
, 298 Ill. App. 3d 892, 700 N.E.2d 149 (1998).  The circuit court did not consider 
Armstead
 in its decision, since it appeared after the circuit court ordered Piecuch’s reinstatement.  In 
Armstead
, a random drug test showed that a deputy had been using marijuana, in violation of department policy.  The sheriff immediately suspended her with pay.  Two months later a brief hearing was held and the deputy was suspended once again, this time without pay.  Less than a month after the first hearing, formal charges were filed with the Board seeking termination of the deputy’s employment.  Over a year later the Board held a hearing and ordered the deputy discharged for cause.  
Armstead
, 298 Ill. App. 3d at 894, 700 N.E.2d at 150.

The deputy appealed, arguing, 
inter
 
alia
, that the Board had lacked jurisdiction to hear her case since charges had not been filed within 30 days of her initial suspension.  The circuit court agreed that the Board had lacked jurisdiction and ordered the deputy reinstated.  The appellate court reversed.  The court found that, in light of changes in the Board rules since 
Zurek
 was decided, it was no longer necessary to bring charges for termination within the initial 30 days of a suspension and, consequently, that the Board had jurisdiction.  
Armstead
, 298 Ill. App. 3d at 896, 700 N.E.2d at 151-52.

Armstead
 held that failure to file charges within the first 30 days of suspension does not deprive the Board of jurisdiction to hear a termination case. 
Armstead
, 298 Ill. App. 3d at 896, 700 N.E.2d at 151-52.  However, it is clear from the language of sections 3-7011 and 3-7012 of the Code that it is not permissible to wait more than 30 days to file charges for a suspension.  If the sheriff could to wait more than 30 days after the commencement of a suspension before filing charges, this would enable the sheriff to suspend for more than 30 days without charges or a hearing, which sections 3-7011 and 3-7012 forbid.  

The power of an administrative agency such as the Board is strictly circumscribed by its enabling statute. “To the extent that an agency acts outside its statutory authority, it acts without jurisdiction.”  
Armstead
, 298 Ill. App. 3d at 894, 700 N.E.2d at 150.  Sections 3-7011 and 3-7012 do not allow suspensions of more than 30 days without formal charges.  Consequently, the Board does not have jurisdiction to hear suspension cases in which charges were filed more than 30 days after the commencement of the suspension.  
Armstead
, moreover, does not contradict this conclusion, for
 the 
Armstead
 court specifically noted that the deputy was not challenging her suspension, and thus it did not consider that issue.  
Armstead
, 298 Ill. App. 3d at 896, 700 N.E.2d at 52.

In order to validly suspend an employee for more than 30 days, we construe sections 3-7011 and 3-7012 of the Code to require that formal charges be filed within 30 days of the suspension.  However, section 3-7011 does not govern termination, and where both a suspension and a termination are involved, unless the termination is predicated on an invalid suspension, section 3-7012 does not mandate that proceedings to terminate be filed within 30 days of the suspension.  In our view, the Board in the case 
sub
 
judice
 had jurisdiction to consider the termination proceedings against Piecuch.  See 
Zurek
, 42 Ill. App. 3d 1044, 356 N.E.2d 1079; 
Armstead
, 298 Il. App. 3d 892, 700 N.E.2d 149.

II 

Since the Board had jurisdiction to hear the termination case, it will be necessary to consider the Board's finding of cause for termination.  The relevant inquiry in administrative review is whether the administrative agency’s findings are against the manifest weight of the evidence.  
Ruther v. Hillard
, 306 Ill. App. 3d 997, 1002 ___ (1999).  The appellants note that, on review, administrative findings of fact are deemed 
prima
 
facie
 true and correct. 735 ILCS 5/3-110 (West 1996). 
 A reviewing court should not resolve factual inconsistencies or reweigh the evidence.  
Ruther
, 306 Ill. App. 3d at 1002, ____.

Based on the law and the undisputed facts, after reviewing the record, we hold that the Board’s finding of cause for termination was against the manifest weight of the evidence.  It is undisputed that: (1) Deputy Piecuch's credentials were confiscated; (2) he could not work without his credentials; (3) he made efforts to get his credentials back; and (4) he was not being paid.

By taking Deputy Piecuch's credentials and telling him to stop calling in, the department effectively suspended him without pay.  This suspension went on for over two years before there was any hearing.  Sections 3-7011 and 3-7012 unambiguously provide that a sheriff may not suspend a deputy for more than 30 days without a prior hearing.  The suspension in the instant case was without legal authority because it contravened these sections of the Code.  
Fruhling v. County of Champaign
, 95 Ill. App. 3d 409, 417, 420 N.E.2d 1066, 1070 (1981).

Appellants contend that the sheriff only suspended Piecuch on August 8, 1989, because that is when he was notified that he was being suspended.  However, it is of no import that the department did not label its action a suspension when it prevented Piecuch from working.  The fact that Piecuch was not given any sort of official notice of his suspension until shortly before the termination hearing does not mean that he was not suspended in October 1987.   

The appellants also argue that they could not have suspended Piecuch because when he did not show up for work at Maywood he “essentially quit.”  However, the department may not circumvent a requirement of a hearing before termination simply by labeling an employee’s temporary absence a constructive resignation.  An instructive case is 
People ex rel. Polen v. Hoehler
, 405 Ill. 322, 90 N.E.2d 729 (1950).  In 
Polen
, an employee of the department of public welfare was discharged pursuant to a rule providing that any employee absent without leave for three successive days was considered to have resigned.  The employee had needed to leave work temporarily in order to care for her sick sister.  Although she had tried to get permission for her trip from the superintendent at her workplace, he was not there at the time. When she returned in a few days she was not allowed to work.   She asked for a termination hearing before the Civil Service Commission, but her request was denied since she had supposedly resigned.  As in the instant case, the statute governing the commission allowed discharge only for just cause, after a hearing.  The supreme court held that it exceeded the commission’s authority to discharge an employee without a hearing on cause, even if the commission said she had constructively quit.  
Polen
, 405 Ill. at 328, 90 N.E.2d at 733.

In 
Polen
, the court wrote: 

“There are many instances in which three days’ absence, without notice, might occur without the slightest indication of resignation or of improper conduct.” 
People ex rel. Polen
, 405 Ill. at 328, 90 N.E.2d at 733.

In order for there to be effective resignation or abandonment of employment, the employee must have an intention to relinquish the employment accompanied by an unequivocal act of relinquishment.  
Fruhling
, 95 Ill. App. 3d at 418, 420 N.E.2d at 1071.  In the instant case Piecuch called in until he was instructed to cease doing so.  According to meeting notes, Piecuch and Director Casserly of internal affairs were both of the opinion that Piecuch had not resigned.  A finding that Piecuch intended to relinquish his employment and unequivocally manifested this intent is not supported by the record.

Appellants' reliance on 
Armstead
 is misplaced.  While in 
Armstead
 the possible illegality of the prehearing suspension did not affect the legitimacy of the termination hearing, in the case 
sub
 
judice
 the prehearing suspension and the termination hearing are linked.  In 
Armstead
 the court noted that the issue of the suspension was independent of the termination, and, thus, although the prehearing suspension might have been illegal, that was a separate issue from termination.  
Armstead
, 298 Ill. App. 3d at 896, 700 N.E.2d at 152.  In the instant case, however, the termination is predicated on the suspension.  The complaint against Piecuch requested that he be discharged based on the entire 25 months during which he had not worked.

Another instructive case is 
Secaur v. Illinois State Civil Service Comm'n.
, 408 Ill. 197, 96 N.E.2d 464 (1951).  In 
Secaur
, an investigator for the Illinois Public Aid Commission was transferred to the Department of Registration.  She did not work for over two months and was terminated for absence from work.  However, the employee had continually tried to work, but the Department would not give her an assignment.  The court disagreed with the Civil Service Commission’s position that there was just cause to fire the employee.  “As we view it, absence from work is not the real issue here, but rather whether the unexplained and apparently unexcused failure to assign work to an employee is sufficient basis to discharge that employee on the ground that he or she is absent from work.  We hold that it is not ***.”  
Secaur
, 408 Ill. at 206, 96 N.E.2d at 468. See also 
Fruhling
, 95 Ill. App. 3d at 416, 420 N.E.2d at 1069 (“It is no defense that the employee has not done the work, for if the suspension is unlawful, the suspension is a mere forced vacation ***.”); 
Johnson v. Director, Downstate Medical Center, State University
, 384 N.Y.S.2d 189, 52 A.D.2d 357 (1976).  Similarly here, the sheriff’s department did not have the authority to terminate Piecuch for absence from work when the department prevented him from working.

III

Since we affirm the circuit court’s order of reinstatement on the grounds that the Board’s finding of cause for discharge was against the manifest weight of the evidence, we do not consider it necessary to address the remaining due process issue that has been briefed by both parties on appeal.

The judgment of the circuit court is affirmed.

Affirmed.

GORDON and McBRIDE, JJ., concur.