740 N.E.2d 21 (2000)
317 Ill. App.3d 863
251 Ill.Dec. 191
LaGRANGE MEMORIAL HOSPITAL, Plaintiff-Appellee,
v.
ST. PAUL INSURANCE COMPANY, Defendant-Appellant.
No. 1-99-3017.
Appellate Court of Illinois, First District, Sixth Division.
November 9, 2000.
Rehearing Denied December 22, 2000.
*24 Piper Marbury Rudnick & Wolfe, Chicago (Kathryn C. Thomas, of counsel), for Appellant.
Schiff & Hulbert, Chicago (Matthew B. Schiff, Linda C. Kramer, James W. Hulbert, of counsel), for Appellee.
Justice GALLAGHER delivered the opinion of the court:
This is an insurance coverage dispute between LaGrange Memorial Hospital (LaGrange) and St. Paul Insurance Company (St. Paul) arising out of a workers' compensation claim brought by Hilke Mundy (Mundy) for injuries she sustained while working as a physical therapist at LaGrange. LaGrange filed a declaratory judgment action against St. Paul, contending that St. Paul had a duty to defend and indemnify LaGrange against Mundy's claim under an umbrella excess insurance policy issued by St. Paul to Rehabilitation Services of Mid-America (RSMA), now known as MedRehab, Inc. (the St. Paul policy). The circuit court granted summary judgment to LaGrange. For St. Paul's vexatious and unreasonable conduct, the court awarded statutory penalties, pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155(1) (West 1996)), and prejudgment interest under section 2 of the Illinois Interest Act (815 ILCS 205/2 (West 1996)). St. Paul now appeals. We affirm with sanctions.
Numerous motions have been filed by the parties in this appeal which will also be considered here. We first consider whether we have jurisdiction over this appeal. St. Paul had until August 27, 1999, to file its notice of appeal, but did not do so until August 30, 1999. The notice of appeal was filed late, by one business day, due to an inadvertent miscalculation on the part of St. Paul's docketing department. Upon learning of its error, St. Paul timely filed a motion for an extension of time to file its notice of appeal pursuant to Illinois Supreme Court Rule 303(d) (155 Ill.2d R. 303(d)), to which LaGrange filed a response, requesting that we deny St. Paul's motion. We granted the motion. LaGrange subsequently filed a motion to cite additional authority, namely, Berg v. Allied Security, 193 Ill.2d 186, 249 Ill.Dec. 770, 737 N.E.2d 160 (2000), in support of its argument that this appeal should be dismissed due to St. Paul's late notice of filing, as this court was without jurisdiction.
The instant case is similar to Bank of Herrin v. Peoples Bank, 105 Ill.2d 305, 85 Ill.Dec. 493, 473 N.E.2d 1298 (1985). In Bank of Herrin, the Illinois Supreme Court held that a docketing error of three days was a "reasonable excuse" for the late filing of a notice of appeal, where the error was an honest mistake and on the day the error was discovered, the appealing attorney mailed a motion for an extension to opposing counsel and filed the motion with the court on the next business day, one business day after the 30 days had elapsed. We conclude that Berg is inapposite as it did not involve either Supreme Court Rule 303(d) or a docketing error on the part of counsel, similar to that in Herrin and the instant case. Thus, we have jurisdiction to consider this appeal.
LaGrange also filed a motion for sanctions, pursuant to Rule 375(b), contending that St. Paul's appeal is not taken in good faith and is frivolous. St. Paul filed a response; LaGrange filed a reply. LaGrange also filed a motion to strike, as untimely, St. Paul's response to the motion for sanctions, which we now deny. LaGrange's *25 motion for sanctions is directed to the merits of the appeal, which we shall address before we consider the motion.
La Grange also filed a motion to strike St. Paul's reply brief. Although LaGrange's arguments are not entirely without merit, we deny the motion.
On or about March 1, 1983, RSMA entered into a written contract with LaGrange, formerly known as Community Memorial Hospital. Under the terms of the contract, RSMA, a provider of physical therapy services, was to be responsible for the operation of the physical therapy department at LaGrange, which included the exclusive rendering of all services and the performance of all the duties customarily conducted by physical therapists in similar hospitals, including the general and overall administration, supervision and operation of the physical therapy department.
The written contract entered into by RSMA provided in part as follows:
"RSMA agrees to indemnify, hold harmless, save and protect from any and all claims, demands, costs, or judgements including reasonable attorney's fees which arise out of * * * Workman's Compensation Liability or other liability imposed upon the Hospital as a result of this Contractual Agreement. RSMA shall maintain liability coverage in the amount of $700,000.00 to $600,000.00 on each employee. RSMA also maintains a $1,000,000.00 umbrella policy for negligence. [LaGrange] shall receive, at least annually, an update on the certificate or [sic] insurance for RSMA. RSMA shall maintain in force for the duration of this Contract, Workman's Compensation coverage insured in any company or association authorized under the laws of this State (Illinois) to insure the liability to pay compensation under the Act."
In compliance with this provision, RSMA maintained several insurance policies, including the St. Paul policy at issue here. This St. Paul policy covered not only RSMA but certain other entities. The relevant language states as follows[1]:
"What This Agreement Covers
We'll pay amounts you and others protected under this agreement are legally required to pay as damages for covered bodily injury, property damage, personal injury, and advertising injury claims. Claims for bodily injury or property damage are only covered if the injury or damage results from an accidental event."
In addition, the policy provided as follows:
"Who is Protected * * *
Besides you, certain other persons are protected under this agreement. Some are protected because of the way your business is owned: by an individual, partnership or joint venture, or other organizations such as a corporation."
The policy further provides as follows:
"Those you have agreed to protect. We'll protect any person, organization, trustee or estate if you've entered into a written contract that requires you to provide the kind of protection offered by this agreement. However, this protection only applies in connection with:
 operations you conduct or that are conducted on your behalf; or
 facilities you own or use."
The policy also contained the following language under the exclusions:
"We won't cover or defend against claims for any of the following liabilities. Worker's compensation. We won't cover obligations that protected persons or their insurers have under worker's compensation, unemployment compensation, disability benefits or similar laws. But this exclusion won't apply to liability of *26 others you've assumed under a contract or agreement."
On December 27, 1984, which was during the term of the agreement between RSMA and LaGrange, Mundy was injured. At the time, RSMA had a workers' compensation insurance policy and a general liability insurance policy with St. Paul, as well as the St. Paul policy involved in this appeal. On March 25, 1985, Mundy filed a workers' compensation claim against LaGrange. LaGrange made temporary total disability (TTD) payments to Mundy, as required under the Illinois Workers' Compensation Act (820 ILCS 305/8(b) (West 1996)).
Prior to the arbitration on Mundy's workers' compensation claim, LaGrange sent a letter to RSMA, dated March 12, 1990, demanding indemnification for Mundy's claim pursuant to the 1983 contract. The 2-page letter explained LaGrange's basis for its demand, referring to the relevant provisions of the written agreement entered into between RSMA and LaGrange. On March 27, 1990, RSMA provided notice to St. Paul that LaGrange demanded indemnification for Mundy's claim. This notice included a copy of the letter from LaGrange, along with the contracts under which LaGrange was claiming RSMA was responsible for Mundy's claim. The documents sent to St. Paul were listed in a cover letter that accompanied the documents. On or about April 5, 1990, St. Paul confirmed receipt of this notice. St. Paul did not defend LaGrange under a reservation of rights nor did it file a declaratory judgment action. On October 1, 1990, LaGrange added RSMA as a respondent in the Mundy workers' compensation claim. On October 11, 1990, RSMA notified St. Paul of this action taken by LaGrange. In or about December 1990, St. Paul destroyed the subject policy.
On December 29, 1994, LaGrange sued RSMA for breach of the 1983 contract based on RSMA's refusal to indemnify LaGrange for Mundy's workers' compensation claim (case No. 94 L. 16796). St. Paul refused to defend RSMA on the workers' compensation and breach of contract claims, so RSMA filed a declaratory judgment action against St. Paul (case No. 94 CH 8997). On or about June 6, 1995, RSMA and St. Paul settled the declaratory judgment action. On July 25, 1995, LaGrange sent a letter to St. Paul demanding, based upon the contract between LaGrange and RSMA, that St. Paul immediately defend and indemnify LaGrange for Mundy's workers' compensation claim. On September 14, 1995, LaGrange filed this declaratory judgment action against St. Paul. On September 22, 1995, St. Paul wrote a letter in which it refused to defend LaGrange. In granting summary judgment, the trial court concluded that St. Paul had a duty to defend and indemnify LaGrange under the St. Paul policy. The court concluded that St. Paul had actual notice of LaGrange's claim as of March 27, 1990. Noting that St. Paul failed to defend under a reservation of rights or file a declaratory judgment action, the court concluded that St. Paul's conduct estopped it from asserting any coverage defenses, including late notice.
Our standard of review of the trial court's grant of summary judgment is de novo. Cincinnati Cos. v. West American Insurance Co., 183 Ill.2d 317, 323, 233 Ill.Dec. 649, 701 N.E.2d 499, 502 (1998); Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill.2d 90, 102, 180 Ill. Dec. 691, 607 N.E.2d 1204 (1992).
In Illinois, an insurer's duty to defend is determined by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy. Outboard Marine, 154 Ill.2d at 107-08, 180 Ill.Dec. 691, 607 N.E.2d at 1212. If the allegations in the underlying complaint fall within or even potentially within the policy's coverage, the insurer's duty to defend arises. See, e.g., Cincinnati Cos., 183 Ill.2d at 323, 233 Ill.Dec. 649, 701 N.E.2d at 502; Outboard Marine, 154 Ill.2d at 125, 180 Ill.Dec. 691, 607 N.E.2d *27 at 1212. Thus, in determining whether a duty to defend has arisen it is the potentiality of coverage that matters. See, e.g., Aetna Casualty & Surety Co. v. Prestige Casualty Co., 195 Ill.App.3d 660, 664, 142 Ill.Dec. 689, 553 N.E.2d 39, 41 (1990) ("Unless the complaint, on its face, clearly alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend."). The threshold that a complaint must satisfy to present a claim of potential coverage is low. Bituminous Casualty Corp. v. Gust K. Newberg Construction Co., 218 Ill.App.3d 956, 960, 161 Ill.Dec. 357, 578 N.E.2d 1003, 1006 (1991). For potentiality of coverage to exist, the complaint need present only a possibility of recovery, not a probability of recovery. Bituminous Casualty Corp., 218 Ill.App.3d at 960, 161 Ill.Dec. 357, 578 N.E.2d at 1006.
Our supreme court has repeatedly and consistently identified the two options available to an insurer which takes the position that a complaint potentially alleging coverage is not covered under its policy: the insurer may either "`defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage.' [Citation.]" (Emphasis added.) State Farm Fire & Casualty Co. v. Martin, 186 Ill.2d 367, 373, 238 Ill.Dec. 126, 710 N.E.2d 1228, 1231 (1999). The course of action chosen by St. Paul, refusing to do either, has been referred to as a third option by one court. Maneikis v. St. Paul Insurance Co., 655 F.2d 818 (7th Cir.1981) (noting that the insurer can refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend).
Thus, the threshold question in this appeal is whether St. Paul breached its duty to defend. An insurer's duty to defend is much broader than its duty to indemnify. Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill.2d 384, 393-94, 189 Ill.Dec. 756, 620 N.E.2d 1073 (1993). The determination of whether St. Paul breached its duty to defend turns not on whether the claim actually came within the policy (establishing the duty to indemnify) but, rather, on whether the 1990 claim was potentially within the scope of coverage. St. Paul has presented numerous arguments as to why it believes the claim here was not within the policy coverage. In so doing, St. Paul fails to adequately distinguish its duty to defend from its duty to indemnify LaGrange. The distinction is important in this appeal. It has long been established that the consequence of an insurer's breach of its duty to defend is that it is estopped from later raising any policy defenses based on noncoverage. See Sims v. Illinois National Casualty Co., 43 Ill.App.2d 184, 193 N.E.2d 123 (1963).
Clearly, with respect to the Mundy claim, there was a possibility that the St. Paul policy afforded coverage to LaGrange; whether it actually did so was a matter for later investigation by St. Paul. See, e.g., Clemmons v. Travelers Insurance Co., 88 Ill.2d 469, 476, 58 Ill.Dec. 853, 430 N.E.2d 1104, 1107 (1981). St. Paul offers no real argument, since there is none, that the 1990 claim did not potentially come within the scope of coverage. We conclude that St. Paul's duty to defend LaGrange in the underlying Mundy claim was established in 1990. St. Paul breached its duty to defend by failing to either seek a declaratory judgment that there was no coverage or defend the claim under a reservation of rights. Thus, since St. Paul breached its duty to defend, in the first instance, it is now estopped from asserting any defenses of noncoverage.
St. Paul's attempts to draw a distinction between a duty to defend RSMA and a duty to defend LaGrange are unavailing. St. Paul wrote this policy to include protection not only to the named insured, but also to third-party beneficiaries, such as LaGrange. By drafting this language, St. Paul acknowledged and accepted *28 that its insured would be entering into contracts under which St. Paul would be obligated to provide a defense and a direct benefit to those parties, such as LaGrange. St. Paul did not require that its insured get St. Paul's approval of the contracts or require its insured to disclose the identities of the third parties or require that RSMA name those parties as additional insureds. St. Paul thus assumed the responsibility of providing defenses for certain unknown and unnamed third-party beneficiaries. Since LaGrange falls under the definition of the description of the others protected under the agreement, it is a direct beneficiary and is entitled to enforce the terms of the insurance policy. See Altevogt v. Brinkoetter, 85 Ill.2d 44, 55, 51 Ill.Dec. 674, 421 N.E.2d 182 (1981) (it is unnecessary that a contract for the benefit of a third-party beneficiary identify him by name; the contract may define the party benefitted by class description); American National Trust Co. v. Kentucky Fried Chicken of Southern California, Inc., 308 Ill.App.3d 106, 120, 241 Ill.Dec. 340, 719 N.E.2d 201, 211 (1999) (same); Garcia v. Lovellette, 265 Ill.App.3d 724, 732, 203 Ill.Dec. 376, 639 N.E.2d 935 (1994) (same). This principle is even more compelling here where we are dealing with a policy of insurance which is, in addition, strictly construed against the drafter. LaGrange is covered by the St. Paul policy because it is a protected person pursuant to the language drafted by St. Paul.
St. Paul, in bringing this appeal, continues to try to put forth its additional policy defense of late notice, contending that the 1990 notice was not adequate and that its duty to defend could not have been triggered until July 25, 1995, the date when St. Paul received notice of the claim directly from LaGrange. Illinois law is clear that an insurer's duty to defend is triggered by actual notice of a claim against the insured. Cincinnati Cos. v. West American Insurance Co., 183 Ill.2d 317, 233 Ill.Dec. 649, 701 N.E.2d 499 (1998). An insurer has "actual notice" where it knows both "`that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies.' [Citation.]" (Emphasis added.) Employers Insurance v. Ehlco Liquidating Trust, 186 Ill.2d 127, 143, 237 Ill.Dec. 82, 708 N.E.2d 1122, 1131 (1999). "Actual notice" exists where the insurer receives notice "from any source sufficient to permit the insurer to locate and defend its insured." (Emphasis added.) Insurance Co. v. Federal Kemper Insurance Co., 291 Ill.App.3d 384, 388, 225 Ill.Dec. 444, 683 N.E.2d 947 (1997). As we previously explained, on March 27, 1990, RSMA provided notice to St. Paul that LaGrange demanded indemnification for Mundy's claim. This notice included a copy of the letter from LaGrange, along with the contracts under which LaGrange was claiming RSMA was responsible for Mundy's claim. The documents sent to St. Paul were listed in a letter that accompanied the documents. On or about April 5, 1990, St. Paul confirmed receipt of this notice. That it was RSMA which provided notice at that time, not LaGrange, is irrelevant. The date that LaGrange first notified St. Paul is not the issue; what is critical is when St. Paul had actual notice. The trial court concluded, and we agree, that St. Paul had actual notice of this claim in 1990.
Nonetheless, St. Paul asserts in its brief as follows:
"At best, the 1990 notice informed St. Paul that Hilke Mundy, a LaGrange employee, had brought a workers' compensation claim against her employer, and that LaGrange wanted RSMA to pay. The 1990 notice did not inform St. Paul that LaGrange or RSMA had a contract between them requiring RSMA to make LaGrange an insured under the St. Paul Umbrella Excess Liability policy. The 1990 notice did not inform St. Paul that *29 LaGrange did not have underlying Workers' Compensation insurance." (Emphasis added.)
The "pieces of information" purportedly lacking from RSMA's notice are not pertinent. RSMA had no duty to include such information in its notice. St. Paul's contention that the 1990 notice did not provide St. Paul with actual notice of its purported obligations is specious.
Because St. Paul destroyed the policy, the record does not contain the policy's notice provision. Nonetheless, St. Paul has produced specimens of all of the alternative notice provisions that might have been in effect. First, none of the notice provisions can be interpreted as requiring RSMA to "inform St. Paul that LaGrange or RSMA had a contract between them requiring RSMA to make LaGrange an insured under the St. Paul Umbrella Excess Liability policy." Second, none of the notice provisions can be interpreted as requiring RSMA to "inform St. Paul that LaGrange did not have underlying Workers' Compensation insurance." In fact, St. Paul's assertion of some requirement that RSMA make LaGrange an insured is nothing more than an attempt, after the fact, to inject into the policy St. Paul's meritless argument that only those that RSMA named as an insured were protected under the policy. RSMA did inform St. Paul that it had a contract with LaGrange and provided a copy of the contract, which when read together with the St. Paul policy, showed that LaGrange was a protected entity and showed undeniably that Mundy's claim was at least potentially within the policy's coverage. Moreover, notice by an insured to its insurance company is sufficient to charge the insurer on all policies running in the insured's favor. Casualty Insurance Co. v. E.W. Corrigan Construction Co., 247 Ill.App.3d 326, 332-33, 187 Ill.Dec. 20, 617 N.E.2d 228, 233-34 (1993).
Even assuming, arguendo, that St. Paul's duty to defend was not triggered until it received notice of Mundy's claim until July 25, 1995, by failing to either defend LaGrange under a reservation of rights or file a declaratory judgment action, St. Paul breached its duty to defend and is estopped from putting forth its defense of late notice. As the supreme court clarified in an opinion issued a full year prior to St. Paul's filing of its opening brief in this appeal, there is no exception to the estoppel doctrine for late-notice cases. Employers Insurance v. Ehlco Liquidating Trust, 186 Ill.2d 127, 237 Ill.Dec. 82, 708 N.E.2d 1122 (1999). In so doing, the Employers Insurance court resolved the case law conflict, approving of those cases, including Maneikis v. St. Paul Insurance Co., 655 F.2d 818, which had previously held that the late-notice exception did not exist. The supreme court again emphasized that "the insurer must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these actions, the estoppel doctrine applies." (Emphasis added.) Employers Insurance, 186 Ill.2d 127, 153, 237 Ill.Dec. 82, 708 N.E.2d 1122, 1136. As the Employers Insurance court further explained: "Once the insurer breaches its duty to defend * * * the estoppel doctrine has broad application and operates to bar the insurer from raising policy defenses to coverage, even those defenses that may have been successful had the insurer not breached its duty to defend. [Citation.]" Employers Insurance, 186 Ill.2d at 151-52, 237 Ill.Dec. 82, 708 N.E.2d at 1135. St. Paul received actual notice of the claim in 1990. At that time, St. Paul failed to either defend the suit under a reservation of rights or seek a declaratory judgment that there was no coverage. In so doing, St. Paul breached its duty to defend. St. Paul is estopped from raising this policy defense to coverage.
In its reply brief, St. Paul, for the first time, contends that LaGrange's filing of the declaratory judgment action relieved St. Paul from its duty under Employers Insurance to file a declaratory judgment *30 action and, therefore, the estoppel doctrine does not apply. St. Paul has waived this argument, pursuant to Illinois Supreme Court Rule 341(g) (155 Ill.2d R. 341(g)), which states that "The reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee * * *."
Even if St. Paul had not waived this argument, we would reject it. St. Paul's argument, and the sole case cited in support of its argument, presumes that prejudice must be alleged for the estoppel doctrine to apply. As our supreme court clarified in Employers Insurance, there is no requirement of prejudice in cases, such as the instant case, that involve an insurers's breach of its duty to defend. Employers Insurance, 186 Ill.2d at 158, 237 Ill.Dec. 82, 708 N.E.2d at 1138 ("None of this court's cases applying this form of estoppel, however, even discuss prejudice. * * * Moreover, several appellate court cases have expressly rejected the requirement of prejudice in this context."). In any event, since St. Paul received "actual notice" in 1990, whether LaGrange's filing of the declaratory judgment action excused St. Paul's second breach of a duty to defend, this time in 1995, is inconsequential. It is St. Paul's breach of its duty to defend in 1990 that is dispositive here.
[Nonpublishable material removed under Supreme Court Rule 23].
We next consider St. Paul's arguments that the trial court committed reversible error by awarding penalties pursuant to section 155 and prejudgment interest. The standard of review for an award of penalties under section 155 is a matter within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of discretion. Marcheschi v. Illinois Farmers Insurance Co., 298 Ill.App.3d 306, 232 Ill.Dec. 592, 698 N.E.2d 683 (1998). Our review of the record shows that the trial court did not abuse its discretion in awarding penalties pursuant to section 155 and we affirm the decision. Similarly, the decision to award prejudgment interest under section 2 of the Illinois Interest Act is within the circuit court's sound discretion and will not be reversed absent an abuse of discretion. In re Estate of Wernick, 127 Ill.2d 61, 87, 129 Ill.Dec. 111, 535 N.E.2d 876 (1989); Marcheschi v. Illinois Farmers Ins. Co., 298 Ill.App.3d 306, 232 Ill.Dec. 592, 698 N.E.2d 683 (1998). After reviewing the record, we find no evidence to suggest that the circuit court abused its discretion in deciding to award LaGrange prejudgment interest and we affirm the decision.
We now address LaGrange's motion for sanctions pursuant to Illinois Supreme Court Rule 375(b), which permits sanctions for the filing of a frivolous appeal and provides, in pertinent part, that "[a]n appeal * * * will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." 155 Ill.2d R. 375(b). In its motion, LaGrange correctly notes that St. Paul cited three cases in its appeal brief, but failed to inform the court that these cases had been overruled by the Illinois Supreme Court. St. Paul responds that it merely cited the cases for isolated principles, and not as support for its central, key points.
St. Paul's counsel should take note that, in the future, should it be unable to find a case to support a principle, other than one which has been overruled, it should point this fact out to the court. St. Paul cited the overruled case, Industrial Coatings Group, Inc. v. American Motorists Insurance Co., 276 Ill.App.3d 799, 213 Ill.Dec. 317, 658 N.E.2d 1338 (1995) (stating that the requirement of timely notice is a condition precedent of the policy), under a key, central point that "LaGrange's Late Notice of the Hilke Mundy Claim Breached the St. Paul Policy's Notice Requirement and Precludes Any Duty To Defend." Yet the Illinois Supreme Court in Employers Insurance expressly overruled Industrial Coatings, clearly explaining that it and other cases were overruled "[t]o the extent that the decisions recognizing an exception *31 for late-notice defenses [citations] conflict with our holding." Employers Insurance, 186 Ill.2d at 154, 237 Ill.Dec. 82, 708 N.E.2d at 1136. As explained earlier, that holdingthat there is no exception to the estoppel doctrine for late-notice defenses where the insurer fails either to defend under a reservation of rights or promptly litigate the issue in a declaratory judgment actionis applicable to the present case. In so holding, the Employers Insurance court cited with approval the cases that had previously held that late notice was no exception to the estoppel doctrine, including Maneikis v. St. Paul Insurance Co., 655 F.2d 818 (7th Cir.1981), cited earlier in our discussion.
In Maneikis, the court explained as follows:
"Once an insurer violates its duty to defend, it is estopped to deny policy coverage in a subsequent lawsuit by the insured or the insured's assignee. This equitable estoppel[[2]] is based upon the principle that `the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, ... when it has already breached the contract by violating the provisions inuring to the benefit of the insured ...' [Citations.] The estoppel arises at the moment the insurance company wrongfully refuses to defend." Maneikis, 655 F.2d at 821-22.
St. Paul defends its use of the overruled case, Industrial Coatings, by noting that its "only use" of the case was to assert "the notice requirements in insurance policies are meant to allow an insurer to investigate a claim, make a determination regarding coverage, and prepare a defense for the insured in the event there is coverage for the claim." Yet, Industrial Coatings is cited generally, with no specific page reference and nowhere in the case do we find language similar to the principle upon which St. Paul purportedly relied.
In a footnote in its brief, St. Paul stated as follows: "Under Illinois law, an insurer's defense obligation is not triggered until the insured tenders its defense to the insurer. [Citations.]" This is an inaccurate and potentially misleading statement. The cases cited were expressly overruled by our supreme court in Cincinnati Cos. v. West American Insurance Co., 183 Ill.2d 317, 233 Ill.Dec. 649, 701 N.E.2d 499 (1998), which, as discussed previously, held that an insurer's defense obligation is triggered when it receives "actual notice."
That St. Paul cited the case in support of its argument that it should not be obligated to reimburse LaGrange for its pre-tender defense costs is not a good reason for the misleading statement. Moreover, the reference was totally unnecessary since St. Paul was essentially arguing that it did not receive "actual notice" until July 25, 1995, the date that LaGrange sent its letter.
In any event, even if July 25, 1995, was the date that St. Paul received the "actual notice" triggering its duty to defend, St. Paul failed to defend LaGrange under a reservation of rights and failed to file a declaratory judgment, but instead chose the third option described by the court in Maneikis v. St. Paul Insurance Co., 655 F.2d 818 (7th Cir.1981), and did neither at its peril that it might later be found to have breached its duty to defend. St. Paul, having violated its duty to defend, is estopped to deny policy coverage in a subsequent lawsuit by the insured.
St. Paul also failed to comply with the requirements of Illinois Supreme Court Rule 342(a) (134 Ill.2d R. 342(a)), which requires the appellant's brief to include an appendix containing, among other things, the judgment appealed from, the notice of appeal and a complete table of contents of the record on appeal. In addition, St. Paul's reply brief exceeds the page limitation *32 imposed by Illinois Supreme Court Rule 341(a) (134 Ill.2d R. 341(a)). "`Adherence to supreme court rules [such as Rule 341] and [Rule] 342(a) is not an inconsequential matter. The purpose of the rules is to require parties to proceedings before a reviewing court to present clear and orderly arguments so that the court may properly ascertain and dispose of the issues involved. [Citation.] Where an appellant's brief fails to comply with the rules, this court has inherent authority to dismiss the appeal for noncompliance with its rules.' [Citation.]" Collier v. Avis Rent A Car System, Inc., 248 Ill.App.3d 1088, 1095, 188 Ill.Dec. 201, 618 N.E.2d 771, 776 (1993). We could have dismissed the appeal because of these omissions. See Piecuch v. Cook County Sheriff's Merit Board, 312 Ill.App.3d 78, 83, 244 Ill.Dec. 426, 726 N.E.2d 22, 26 (2000).
This appeal was frivolous, particularly St. Paul's attempts to persuade this court that RSMA's 1990 notice to St. Paul did not constitute "actual notice" under Illinois law. St. Paul's use of overruled cases was less than exemplary behavior, and we have concluded that St. Paul exploited a somewhat complex set of facts to obfuscate, rather than clarify, the issues in this appeal. We grant LaGrange's motion for sanctions and order St. Paul to pay the reasonable costs of the appeal, and any other expenses necessarily incurred by the filing of the appeal, including reasonable attorney fees, the amount to be determined subject to counsel for LaGrange submitting to this court, within 14 days after the filing of this judgment, an affidavit listing such expenses and fees.
In accordance with the foregoing, we affirm the judgment of the trial court in its entirety.
Affirmed with sanctions.
CAMPBELL, P.J., and BUCKLEY, J., concur.
NOTES
[1] As the actual policy was destroyed by St. Paul, the language is that of a specimen policy.
[2] In Employers Insurance, our supreme court acknowledged that the estoppel doctrine has roots in the principle of equitable estoppel, but further clarified that "it has since developed into a distinct doctrine that stands on its own." Employers Insurance 186 Ill.2d at 151, 237 Ill.Dec. 82, 708 N.E.2d at 1135.